712 S.E.2d 55

**In re KRISTIN Y., Arther Y., Scharlotte Y., and William Y.**

**No. 11–0300.**

Supreme Court of Appeals of West Virginia.

Submitted May 25, 2011.

Decided June 14, 2011.

Darrell V. McGraw, Esq., Attorney General, Katherine Bond, Esq., Assistant Attorney General, Charleston, WV, for Petitioner.

John S. Lanham, Esq., Horner, WV, for Respondent.

Rebecca Donnellan–Pomeroy, Esq., Clarksburg, WV, Guardian ad litem.

PER CURIAM:

This case is before this Court upon the West Virginia Department of Health and Human Resources's appeal of the November 16, 2010, order of the Circuit Court of Harrison County which terminated the custodial and visitation rights of Anna Y.[1] to her four children, but did not terminate her parental rights to said children.[2] As a result of this order, the children remain in the custody of the Department with no contact with their mother but are not available for permanent placement in an adoptive home. In this appeal the Department of Health and Human Resources (hereinafter referred to as "the Department"), joined by the children's guardian ad litem, assert that the circuit court erred when it failed to terminate all parental rights of Anna Y.

The Court has before it the petition for appeal, the designated record, the briefs of counsel and the arguments of counsel. For the reasons set forth below, we agree with the Department and the guardian ad litem's

---

1. We follow our traditional practice in cases involving sensitive facts and use initials rather than surnames to identify the parties. See *In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. All of the father's parental rights were terminated in the order that is the subject of this

appeal. The father has not sought appellate review of this order and the appellant herein does not disagree with the lower court's findings and order of termination. Therefore, this appeal addresses only the parental rights of the mother.

contention that the circuit court committed error when it failed to terminated Anna Y.'s parental rights. The circuit court's order is therefore reversed and this matter is remanded forthwith to the Circuit Court of Harrison County for proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Anna Y., (hereinafter referred to as "Appellee"), and Ricky Y., (hereinafter referred to as "Father"), are the parents of four children, to-wit: Kristin Y., born January 4, 1999, and age 11[3]; Arther Y., born March 18, 2000, and age 9; William Y. (known as "Eddy" throughout these proceedings), born May 31, 2002, and age 7; and Scharlotte Y., born May 31, 2002, and age 7.

On April 7, 2008, while the Appellee was hospitalized for what was alleged to be a suicidal[4] overdose of prescription medicine and the children were in the care of their father and his girlfriend, the West Virginia Department of Health and Human Resources (hereinafter referred to as "Appellant" or "Department") sought emergency custody pursuant to W. Va.Code § 49–6–3(c) (2009) of the four children. The Department believed the children were in imminent danger of abuse and neglect because the children were currently in the care and custody of Ricky Y., who was prohibited by a 2007 domestic violence protection order from Jefferson County, Ohio, from having contact with the children.[5] Child protective service workers determined that Anna Y. had purported to effectuate a transfer of custody to Ricky Y. by a notarized statement that she was giving the children to their father. Included in that statement was a request to the Jefferson County, Ohio, court system to dismiss the

domestic violence protective order. After finding that the children were in imminent danger if left in the care and custody of Ricky Y., the Magistrate Court of Harrison County immediately ratified the removal of the children from his home, and granted the Department temporary custody of the four children. The next day, on April 8, 2008, the Circuit Court of Harrison County entered an order containing findings that returning the children to the home of either parent would be contrary to their best interests because of the current threats of domestic violence, past sexual abuse and the mother's inability to protect the children because of her hospitalization. The circuit court continued the children's custody with the Department.

On April 9, 2008, the Department filed a petition in the Circuit Court of Harrison County alleging that the four children of Anna Y. and Ricky Y. were abused and neglected children. The petition included a number of allegations of child abuse or neglect, including allegations of sexual abuse of Kristin Y. by her father and his girlfriend, maltreatment and sexual exploitation, as well as domestic violence between the mother and father. The Department referenced the domestic violence order of protection from Jefferson County, Ohio, that prohibited the father from having contact with the children. The petition also alleged that the children were witnesses to and subjected to their parents' drug abuse and that the father physically abused the children. The petition also included charges that the living conditions in the children's home were deplorable, unsafe and unfit. The Department alleged in its petition that services to assist the parents in remedying their unfit living conditions and other factors giving rise to potential abuse or neglect of the children were in place as early as October of 2007.[6] The Department al-

---

**3.** All ages given are correct for the time of the dispositional hearing on January 6, 2010.

**4.** While appellee initially conceded that this was an attempt to kill herself, she later contended that she merely forget that she had taken her medication and repeated the dose.

**5.** The Appellee alleged in her petition seeking a protective order that "for the entire 10 years we have been married Ricky has choked, raped ana-

ly (sic), hit and threatened (sic) my life, most recently has threatened over the phone to blow my head off in front of our kids and told our kids he is going to slit my throat. Also (sic) oldest two kids say he penetrated them."

**6.** The Department became involved with the Y. family after the Appellee obtained a domestic violence protective order in the State of Ohio. The Department opened a case for services for

leged that when the children were taken into its custody pursuant to the earlier emergency ratification of custody, the children thanked the protective services workers for coming to get them.

The circuit court granted temporary custody of the children to the Department. In its order dated April 10, 2008, the circuit court also appointed counsel to the parties, appointed a guardian ad litem for the children and for the Appellee, Anna Y., and appointed a CASA.[7]

This petition was amended on April 18, 2008, to include educational neglect occasioned by the mother's failure to enroll the youngest children in school, as well as her failure to provide the children with adequate shelter. The amended petition further stated that the allegations of sexual abuse, maltreatment and emotional abuse had been substantiated against the father.

On May 8, 2008, the circuit court held a hearing on the allegations of abuse and neglect against the parents. Ricky Y. did not appear at the hearing. The circuit court continued the hearing until June 18, 2008, and ordered that the four children undergo a sexual abuse evaluation. Several weeks later, on May 22, 2008, a second amended petition was filed by the Department. This amended petition contained additional allegations of sexual abuse of the children, including the charge that the father engaged in sexual activity with the children, while the

Appellee was present and aware of the father's actions. The amended petition also contained an accusation that the father had held a gun to the Appellee's head in the presence of the children.

On June 9, 2008, the CASA filed a report in which she noted that Kristin Renae Y., the oldest child, was hospitalized for threatening to harm herself. The report indicated that both Kristin Renae Y. and her brother Arther Eugene, were fearful of their father for beating them. The CASA reported that the twins, William and Scharlotte Y., were delayed in their education. The CASA noted in this report that the Appellee had difficulties in maintaining a parental role during visitations with the children. The CASA made specific recommendations at this time, including consistent therapy for the children and speech therapy for the twins.

On June 18, 2008, the circuit court resumed the adjudicatory hearing on the charges and allegations contained in the petitions. At this time the father and Appellee agreed that the children had been abused and/or neglected. The Appellee agreed and stipulated that she had exposed the children to sex and domestic violence, educational neglect and overall inadequate parenting. The circuit court accepted these stipulations and adjudicated the children abused and neglected. The parents separately moved for improvement periods pursuant to W. Va.Code § 49–6–12(b) (2009) [8]

---

the family, which resulted in implementation of a safety plan in November of 2007, under which the Appellee agreed that she would not allow the father to have contact with the children. Some of the services provided prior to the filing of the petition included referrals for home-based services, low-cost housing, domestic violence counseling and housing at a domestic violence shelter.

7. As we explained in *In re: Nelson B.*, 225 W.Va. 680, 695 S.E.2d 910 (2010), CASA stands for Court Appointed Special Advocate. The role and duties of the CASA are defined in Rule 52 of the Rules of Procedure for Child Abuse and Neglect Proceedings. The CASA's primary role is "to further the best interests of the child until further order of the court or until permanent placement of the child is achieved."

8. West Virginia Code § 49–6–12(b) states:
   After finding that a child is an abused or neglected child pursuant to section two of this

article, a court may grant a respondent an improvement period of a period not to exceed six months when:
   (1) The respondent files a written motion requesting the improvement period;
   (2) The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period;
   (3) In the order granting the improvement period, the court (A) orders that a hearing be held to review the matter within sixty days of the granting of the improvement period, or (B) orders that a hearing be held to review the matter within ninety days of the granting of the improvement period and that the department submit a report as to the respondent's progress in the improvement period within sixty days of the order granting the improvement period;

On July 9, 2008, the circuit court placed Anna Y. on a six-month post-adjudicatory improvement period, under the terms and conditions enumerated in the family case plan.[9] The father was likewise placed on an improvement period. The children remained in the custody of the Department. The family case plan for the mother required her to address the following issues: general parenting deficiencies; exposure of the children to inappropriate sexual knowledge; domestic violence; inappropriate discipline; and unstable and inadequate housing. As part of this plan Anna Y. was to cooperate with the Department; keep all scheduled appointments with any program recommended by the Department; reschedule any missed appointments and inform the Department of these scheduling changes; comply with and expect unannounced home visits; sign releases for services and treatment; notify the Department within 24 hours of any address change; make weekly contact with the Department; submit to random blood and urine screenings for the presence of illegal or illicit drugs; fully participate in therapy designed to address the neglect inflicted upon the children; and participate in family therapy if indicated. This family case plan was later amended to include addressing Anna Y.'s past physical abuse of the children.

The mother's compliance with the terms and conditions of her improvement period was initially acceptable. Her cooperation was such that in December of 2008, the Department agreed and recommended to extend Anna Y.'s improvement period for an

additional three months by order entered January 7, 2009.

During the course of the mother's post-adjudicatory improvement period, more information concerning the abuse and neglect of the children became apparent. The children reported a host of abuses at the hands of their parents, including severe physical abuse, witnessing sexual acts between their parents and other paramours, sexual abuse by their father of other women and dreadful and deplorable living conditions. All of these factors contributed to negative developmental and emotional problems for the children. Kristin Y., the oldest child, was diagnosed with suffering from post-traumatic stress disorder and had to be separated from her siblings. At times, she was hospitalized for psychiatric treatment, and was later placed in a series of specialized institutional and foster care placements. At times following the adjudication of the children as abused and neglected, Arther Y. had to be placed in a group home separate from his younger siblings because of alleged sexual behavior toward his younger brother. Eddy Y. experienced such difficulties in controlling his anger and behaviors that he too had to be placed in specialized foster care placements. The educational needs of the children were also assessed. Eddy Y. and Scharlotte Y. were behind in school because their mother had not enrolled them at an appropriate age.

On April 9, 2009, the circuit court held a regular review hearing to assess the parents' progress in their improvement periods. By this time Anna Y.'s participation in the requirements of her improvement period had

(4) Since the initiation of the proceeding, the respondent has not previously been granted any improvement period or the respondent demonstrates that since the initial improvement period, the respondent has experienced a substantial change in circumstances. Further, the respondent shall demonstrate that due to that change in circumstances the respondent is likely to fully participate in a further improvement period; and

(5) The order granting the improvement period requires the department to prepare and submit to the court an individualized family case plan in accordance with the provisions of section three, article six-d of this chapter.

9. Family case plans are defined in W. Va.Code § 49–6D–3 (2009) and provide the framework for the goals of the improvement period. The statute requires that "[t]he family case plan is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening those problems." The contents of the family case plan include a listing of the specific, measurable and realistic goals to be achieved; a listing of the problems to be addressed by each goal; a list of the services, including time-limited reunification services; time targets for achievement of goals or portions of goals and the assignment of tasks to the abusing or neglecting parent, caseworker and to other participants in the planning process, as well as other information.

lessened. Both the Department and the CASA reported that the mother's home was filthy, unorganized, inadequately furnished and located far away from the school bus stop. The CASA believed that the mother was not compliant with her medication to treat her psychiatric condition because the blood tests administered showed no presences of her prescribed drugs. The Department advised the circuit court that Anna Y. was not regularly attending her therapy sessions and has not appeared for other scheduled appointments. Both the Department and the CASA also reported that visitation had gone well. However, at this time the Department believed that the mother was making some progress on her improvement period goals, but needed additional time to complete her services, and recommended a six-month dispositional improvement period. The CASA reluctantly agreed to the dispositional improvement period. On May 5, 2009, Anna Y. was placed on a six-month dispositional improvement period pursuant to W. Va.Code § 49–6–5(c) (2009).[10]

Anna Y.'s compliance with the requirements of the improvement period continued to wane. She refused to take drug screens and stopped attending her therapy sessions after making an allegation of wrongdoing against her counselor. She ceased cooperating with the Department and made allegations of unfair treatment. Anna Y. also began residing in the home of a convicted felon, against the recommendations of the caseworker.

The children continued to make disclosures to the Department and their therapists about their parents' behavior and treatment of them. Kristin Y. continued to disclose incidents of sexual abuse by her father. It was believed that Eddy Y. and Scharlotte Y. witnessed some of this sexual abuse, and that Eddy Y. himself was sexually abused. Scharlotte Y. likewise disclosed sexual abuse by her father. All the children disclosed witnessing sexual activity between their father and their mother. These allegations and more were the basis of another amended petition being filed on July 22, 2009.[11]

On July 23, 2009, the Department filed motions to terminate the improvement periods granted to Anna Y. and the father, based upon non-compliance with the terms and conditions of the improvement periods. Each motion detailed a host of failures on the part of Anna Y. and the father to comply with the Department's directives. Multiple hearings were held on the motions to terminate the improvement periods, beginning in July of 2009 and ending in October of 2009, when the improvement periods expired. Hence, the motions to terminate were rendered moot by the passage of time.

The CASA on October 1, 2009, prepared a written report recommending termination of the parental rights of Anna Y. and the father. In this report, the CASA provided a summary of the services provided to the family. She noted that Kristin Y. had been in eight different placements since the filing of the petition, including a 10–month stay at an inpatient psychiatric facility. Kristin Y. remained in need of specialized institutional care as opposed to a foster home. Arther Y. had been in four separate placements, including a residential group home, but was now in a suitable and appropriate foster care home where he was doing well. William Y. and Scharlotte Y. had been in three placements and were currently placed together and doing well in a foster home.

The CASA expressed concern that "it took 15 months for the respondents to become

10. W. Va.Code § 49–6–5(c) states:

The court may, as an alternative disposition, allow the parents or custodians an improvement period not to exceed six months. During this period the court shall require the parent to rectify the conditions upon which the determination was based. The court may order the child to be placed with the parents, or any person found to be a fit and proper person, for the temporary care of the child during the period. At the end of the period, the court shall hold a hearing to determine whether the conditions have been adequately improved and at the conclusion of the hearing shall make a further dispositional order in accordance with this section.

11. It appears no significant action was taken by the court based upon this second petition, including setting the petition for adjudication on the merits, because it was filed so near to the filing of the motions to revoke the improvement period.

more serious about participating in services and it took a Motion to Revoke Hearing to accomplish this level of effort." She also observed that neither parent took responsibility or explained how the children gained so much knowledge about sexual matters. They likewise did not accept responsibility for the children's host of behavioral issues. She also noted that the parents engaged in blaming one another for the extreme medical neglect[12] suffered by the children. She expressed her fear that without the parents' acknowledgment and acceptance of their roles in the current state of the children's lives, "I am concerned that the risk to the children remains."

In October, 2009, the disposition of this case commenced. On October 8, 2009, the Department filed its amended family case plan for the four children. The Department recommended termination of the father's and Anna Y.'s parental rights. In the case of Anna Y., the Department noted that she had received one six-month post-adjudicatory improvement, one three-month extension of that improvement period and an additional six-month post-adjudicatory improvement period. The case plan cited 10 reasons for its recommendation, including: the appellee's failure to carry out aspects of the family case plan; the failure to follow through with mental health treatment by missing a number of appointments; the failure to take required drug use screenings; the failure to cooperate and maintain regular contact with her caseworker; the failure to apprise the Department of her employment; a lack of motivation and desire to change her lifestyle in order to provide a safe and stable environment for the children and an inability to control her anger. The case plan also noted that the children had been in foster care for the last 15 of the most recent 22 months, and that pursuant to W. Va.Code § 49–6–5b (2009)[13], the Department was required to request termination or revise the case plan to show a compelling reason for not requesting termination.

Over another series of hearings, beginning in October of 2009, the court heard the testimony of some of the service providers for Anna Y. and the father. These hearings continued, with additional testimony from the children's therapists and service providers, as well as the Department's case worker. At the conclusion of the testimony in November 2009, the court instructed the parties to prepare and present proposed findings of fact and conclusions of law, and to submit arguments regarding a disposition pursuant to W. Va.Code § 49–6–5(a)(5) (2009).[14] Another

---

12. One of the children had to have a circumcision because of persistent infections and lesions. The same child was suffering from a dangerous untreated eye infection that the CASA reported could have resulted in his blindness. Another child had to have extensive dental extractions and restorative work because of the lack of dental care.

13. Pursuant to W. Va.Code § 49–6–5b(a)(1), the Department is obligated to seek termination of parental rights when a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home.

14. W. Va.Code § 49–6–5(a)(5) states, in pertinent part:

Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the custody of the state department, a licensed private child welfare agency or a suitable person who may be appointed guardian by the court. The court order shall state: (A) That continuation in the home is contrary to the best interests of the child and why; (B) whether or not the department has made reasonable efforts, with the child's health and safety being the paramount concern, to preserve the family, or some portion thereof, and to prevent or eliminate the need for removing the child from the child's home and to make it possible for the child to safely return home; (C) what efforts were made or that the emergency situation made such efforts unreasonable or impossible; and (D) the specific circumstances of the situation which made such efforts unreasonable if services were not offered by the department. The court order shall also determine under what circumstances the child's commitment to the department shall continue. Considerations pertinent to the determination include whether the child should: (I) Be continued in foster care for a specified period; (ii) be considered for adoption; (iii) be considered for legal guardianship; (iv) be considered for permanent placement with a fit and willing relative; or (v) be placed in another planned permanent living arrangement, but only in cases where the department has documented

hearing was scheduled for December 10, 2009.

The parties timely submitted proposed findings of fact and conclusions of law. The Department and guardian ad litem jointly proposed in their submissions that the parental rights of Anna Y. and the father be terminated. Counsel for Anna Y. proposed an alternate disposition pursuant to W. Va. Code § 49-6-5(a)(5) that would have left the children in the custody of the Department, but retained residual parental rights in Anna Y. so that she may eventually return to seek restoration of her custodial rights.

On December 3, 2009, the CASA wrote a letter to the circuit court again expressing her recommendation that the parental rights of both parents be terminated. "After reviewing numerous reports, attending MDT's [15] and listening to three days of testimony at the Dispositional hearings, in my opinion neither parent has substantially corrected the circumstances that brought Kristen (sic), Arther, Scharlotte and Eddy to the Court's attention," she wrote. She stated that the children would need intensive therapy for a long period of time in an attempt to rehabilitate them from all of the physical and emotional abuse they suffered. She noted that Anna Y. was sporadic in her compliance with the case plan and showed no ability to care for herself despite nearly two years of parenting and individual therapy. She concluded that "these children need to be released from this pain and suffering and be allowed to heal and move on with their little lives."

On January 6, 2010, the circuit court issued [16] a 25-page order regarding the parental rights of both Anna Y. and the father. The father's parental rights were terminated. Anna Y.'s parental rights, however, were not terminated. The court found that termination of Anna Y.'s parental rights was not appropriate in this case "given the specific, tragic facts before the Court." The court

concluded that Anna Y. and the children both suffered mental and physical abuse at the hands of Ricky Y., and that Anna Y. "has committed herself to a course of treatment to remedy the conditions of abuse and neglect for which she is responsible."

The circuit court made certain findings summarizing the testimony rendered at the dispositional hearings. Chanin Kennedy, one of the treating psychologists for the children, testified that they possessed inappropriate knowledge of sex. She opined that Arther Y. was particularly traumatized by this information. The circuit court found that "he had a lot of inappropriate information without a lot of understanding." The circuit court found based upon Ms. Kennedy's testimony that the mother denied any involvement in how the children attained such knowledge of sexual matter and that she did attend one session with Ms. Kennedy in 2008, but missed two previously scheduled sessions.

The circuit court found, based upon the testimony of another treating psychologist of the children, Tammy Hamner, that the children would need family therapy prior to reunification with their parents. While the children needed this therapy, the circuit court found that the parents were not ready for reunification therapy as their own individual counseling had not progressed to that level. The circuit court also found that Anna Y. and the father continued to deny involvement in exposing the children to sexual knowledge. The circuit court also found that the children would continue to exhibit behavioral problems and would not be able to settle until they knew whether they would be returned to their parents.

The circuit court found based upon the testimony of Beth Albert, Kristin Y.'s counselor at a hospital placement, that the child was suffering from post-traumatic stress disorder, child abuse and neglect and physical and sexual abuse. She detailed at least one specific instance of sexual contact between

---

to the circuit court a compelling reason for determining that it would not be in the best interests of the child to follow one of the options set forth in subparagraphs (I), (ii), (iii) or (iv) of this paragraph. . . .

**15.** MDT is an abbreviation for Multi–Disciplinary Team.

**16.** While the date recited in the body of the order was January 6, 2010, this order was not entered by the court until November 16, 2010.

Ricky Y. and Kristin Y., and numerous instances of physical abuse, including the father striking the child with his closed fist, a belt and a frying pan. Ms. Albert, and the circuit court found, that because of the abuse by her parents, Kristin's mental health was tenuous, despite being hospitalized for almost a year. Kristin expressed that she did not want to see her father, and wanted her mother to know how she felt about some of the things she believed her mother allowed to happen to her.

The circuit court found, based upon the testimony of Sharon McMillen, the psychologist who treated Arther Y., Eddy Y. and Scharlotte Y., that all three children suffer from post-traumatic stress disorder. The court found that Arther Y. was afraid of his father and had trust issues with his mother. He was fearful and anxious about his future. He had been thrown down the steps by his father. The court found that Arther Y. wanted to stay in his current placement and be adopted by his foster family. The court further found that Scharlotte Y. and Eddy Y. witnessed physical abuse between their parents. Ms. McMillen testified, and the court found, that it was not in the children's best interest to visit with their parents, as this contact was "re-traumatizing them each time they visited." She opined that the children were stuck in the past, and unable to move forward. The court found that "a lack of contact would help the children settle into their placements better."

Testimony from Steve Richardson, who provided parenting and adult life skills training to Anna Y., as well as supervised visits between her and the children, led to the circuit court's finding that although she had received 16 months of parent education, she had yet to actually complete the program. Mr. Richardson also believed that she could not make any further progress in the parent education program. Mr. Richardson termed her demeanor up and down, and felt that her behavior during visits with her children was erratic. He opined, and the circuit court found, that Anna Y. was not ready for unsupervised visits with the children.

With respect to Anna Y.'s then-current mental status, the circuit court found, through the testimony of her counselor, Tom Hill, that she would need six months to address her own trauma and three to four months to address the parenting issues raised throughout these proceedings. The circuit court found that had Anna Y. not "taken a break from treatment" she would have potentially been at a point to begin family therapy at the end of her dispositional improvement period.

Based upon Anna Y.'s own testimony throughout these proceedings, the circuit court found that her excuses for not attending individual counseling were not acceptable, especially in light of her own psychological problems that caused her to be hospitalized.

The circuit court found that while Anna Y. had a deep affection for her children, "she clearly lacks the requisite judgment and mental stability to effectively protect the health, safety and welfare of her children, including addressing the children's significant mental health issues, at this time." The circuit court order concluded that all of the children in this case had suffered trauma because of the actions of Anna Y. and Ricky Y. Specifically, the court concluded:

> The children in this case have suffered severe trauma at the hands of the respondents. The testimony of the treating psychologists revealed that all of the children suffered from post traumatic stress disorder, that the eldest child has been institutionalized for a significant period of time and continues to remain unstable, that the other children continue to suffer from behavioral issues and sexual acting out, and continue to experience periods of instability to the point that they cannot be reunified. Further, the problems experienced by the children are so significant that they to be separated into three different placements to protect them form acting out on each other, and have been in specialized foster care.

The father's parental rights were severed based upon the court's findings. In regard to Anna Y., however, the court order stated, *inter alia:*

While the Petitioner sought straight termination of parental rights for both parents, the position of counsel for the children was that in a limited set of circumstances, post termination contact with only the respondent, Anna Y., may be appropriate for the children. Counsel for the children is of the opinion that post termination contact with Ms. Y. should occur if all of the following conditions are met:

(a) the minor children request said contact;

(b) the counselors and/or mental health professionals treating the children believe that the contact will not be detrimental to the child(ren);

(c) that the contact be strictly supervised by an appropriate adult; and

(d) if after contact the children deteriorate in any manner, as determined by their counselor and/or mental health provider, that the contact be terminated.

In terms of the progress of the improvement periods granted to the parents, the circuit court determined that "given the degree of the mental trauma suffered by the children, there is no question that after fifteen (15) months nothing more can be done to mitigate, or resolve, the family problems that exist in this case." The court further found that the respondents failed to fully avail themselves of all of the resources offered to them to correct the problems and deficiencies that led to the filing of this matter.

Finally, with respect to Anna Y.'s parental rights, the circuit court concluded as follows:

This Court concludes that termination of the parental rights of Anna Y. is not warranted given the specific, tragic facts before the Court. It has been proved throughout this matter that both Anna Y. and the children suffered mental and physical abuse at the hands of Ricky J. Y., II. Anna Y. has committed herself to a course of treatment to remedy the conditions of abuse and neglect for which she is responsible.

The Court further finds that the disposition available to it pursuant to West Virginia Code § 49–6–5(a)(5) is most appropriate for Anna Y., wherein the Court specifically finds that Anna Y. is presently unable to provide for the children's needs, and the children shall therefore be committed to the temporary legal and physical custody of the West Virginia Department of Health and Human Resources for continued placement in their respective foster homes until such time as reunification is accomplished.

The Court further believes that a disposition pursuant to West Virginia Code § 49–6–5(a)(5) is appropriate because it allows for a gradual transition period, allowing time for the children to emotionally adjust to all the changes while maintaining as much stability as possible.

In making this finding, the Court is mindful that it is not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened . . . ." as stated in Syl. Pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980), nor does the Court believe it is doing so. Rather, the Court concludes that Anna Y. has already demonstrated improvement. Ms. Y has made marked improvements in her life which will benefit the children and address the issues that were of concern to the Court.

With the foregoing findings of fact and legal conclusions, it is in the best interest of the children that the disposition of the Respondent mother, Anna Y., be pursuant to West Virginia Code § 49–6–5(a)(5).

The Department appealed the November 16, 2010, order.

## II.

## STANDARD OF REVIEW

As set forth above, the Department appeals the ruling of the circuit court that allowed Anna Y. to retain her parental rights on two grounds; first that the circuit court erred by not terminating the parental rights of Anna Y. because there was not a reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future; and second, that it was in the children's best interest to have the pa-

rental rights of their mother terminated. Thus, this appeal is based both on the findings of fact of the circuit court, as well as the circuit court's conclusions of law based upon those facts.

■ "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

With these standards in mind, we now consider the arguments of the parties.

## III.

### DISCUSSION

■ We begin our analysis with the understanding that our law favors the rights of a parent to raise his or her children.

" ' "A parent has the natural right to the custody of his or her infant child, and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody,

the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts."

Syllabus, *State ex rel. Kiger v. Hancock,* 153 W.Va. 404, 168 S.E.2d [798] (1969)" Syl. pt. 2, *Hammack v. Wise,* 158 W.Va. 343, 211 S.E.2d 118 (1975)." Syl. Pt. 1, *Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 356 S.E.2d 464 (1987).

■ The substantial rights of the parents, however, are not the sole focus of courts in deciding how to dispose of an abuse and neglect case. We have held that these decisions must always be in furtherance of the children's best interests. In all cases involving the disposition of an abuse and neglect case, we have repeatedly stated that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted). Further, as we held in Syllabus Point 3 of *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996), "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children. Thus, in furtherance of the goals of balancing the substantial parental rights and notice of the children's best interests, the least restrictive alternative is employed.

The statutory plan for determining whether parental rights should be terminated is set forth in W. Va.Code § 49–6–5(a). When it is determined that the conditions that gave rise to the removal of the child from the home cannot be remedied, W. Va.Code § 49–6–5(a)(6) (2009) states that termination of the parental, custodial and guardianship rights of the abusing parent is the remedy.[17] Further, W. Va.Code § 49–6–5(b) provides a definition for the phrase "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected." The provisions

---

17. W. Va.Code § 49–6–5(a) states, in pertinent part:

Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the wel-

fare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency . . .

of this section that are pertinent to the case at bar state:

(b) As used in this section, "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" shall mean that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help. Such conditions shall be considered to exist in the following circumstances, which shall not be exclusive:

.    .    .    .    .

(2) The abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control;

(3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child;

.    .    .    .    .

(5) The abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve the family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child; or

(6) The abusing parent or parents have incurred emotional illness, mental illness or mental deficiency of such duration or nature as to render such parent or parents incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills

.    .    .    .    .

■  However, courts do not have to engage in speculation or guesswork as to when to terminate parental rights. We have previously held:

As a general rule the least restrictive alternative regarding parental rights to custody of a child under W. Va.Code, 49–6–5 (1977) will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

Syl. pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

■  Thus, in some instances, the only remedy is termination of parental rights when there is no reasonable likelihood that the parenting deficiencies or abuse cannot be substantially corrected. We have held:

Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code, 49–6–5 (1977) may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code, 49–6–5(b) (1977) that conditions of neglect or abuse can be substantially corrected.

Syl. pt. 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Our review of the case at bar focuses on whether the circuit court's conclusion of law allowing Anna Y. to retain residual parental rights is supported by the circuit court's own findings of fact. After applying the applicable statutory language to the facts found by the circuit court, we find, utilizing the circuit court's own findings of fact, that the clear and convincing evidence presented by the Department showed "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" on the part of Anna Y. Despite having received 16 months

of parenting and life skills training at the time of her dispositional hearing, she had yet to complete the program and was actually unable to complete the program. Hours of therapy and missed opportunities for counseling still rendered Anna Y. unable and unequipped to properly parent the children. The court found that there was "no question that after fifteen (15) months nothing more can be done to mitigate, or resolve, the family problems that exist in this case." Furthermore, the court found that "the respondents failed to fully avail themselves of all of the resources offered to them in order to correct the problems and deficiencies that led to the filing of this matter." While arguably Anna Y. had made some improvement, it is clear that after reviewing the record Anna Y. was not able to remedy the facts and circumstances that gave rise to these proceedings.

Despite these findings, the circuit court did not fully terminate Anna Y.'s parental rights. Left intact was the chance for future contact with the children. This contact was, of course, conditioned on a series of events, including the child or children's wishes to see their mother, the consent of the treating psychologists, strict supervision and a chance to terminate the contact if the children's condition deteriorated. These residual rights, however remote and unlikely to be exercised, act to prohibit the children's adoption and permanent placement, which is contrary to this Court's precedent stating that children are entitled to permanency to the greatest degree possible. *See In re: Isaiah A.*, — W.Va. —, — S.E.2d — (2010), *citing In re: Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996); *In re Brian D.*, 194 W.Va. 623, 461 S.E.2d 129 (1995); *In re Lindsey C.*, 196 W.Va. 395, 473 S.E.2d 110 (1995) (Workman, J., dissenting).

We find no real error in the lower court's factual findings and find them supported by the clear and convincing evidence in the record. However, the lower court's application of our law to these facts is erroneous. Its failure to terminate Anna Y.'s parental rights and its ultimate conclusion to allow the potential for Anna Y. to have future contact with the four children is an abuse of discretion. The standard applicable herein is whether there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." W.Va.Code § 49–6–5(a)(6). Applying the facts to the statutory definition of when parental rights should be terminated, we find that the lower court's facts amply support the termination of Anna Y.'s parental rights.

We conclude that the facts as developed demonstrate no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future. Hours of therapy, parent education, life skills training and other supportive service, provided through the post-adjudicatory and dispositional improvement periods, have not substantially altered, ameliorated, remitted or modified Anna Y.'s parenting deficiencies. A parent's participation in an improvement period is a clear indicator of the parent's future potential for success and willingness to make the necessary changes to become a fit and suitable parent. Anna Y.'s sporadic cooperation with service providers, her inability to complete a course of parent education over a 15–month period and her failure to fully cooperate with the Department, provide sufficient grounds for the finding that the conditions of neglect or abuse cannot substantially be corrected.

These children are entitled to, and deserve, permanent placements and the opportunity to grow up in loving homes, free from the abuses heaped upon them during their short lives. The circuit court's order deprives the children of the permanency they need, want, deserve and are entitled to have. Based upon the factual record as developed below, in light of the best interests of the children, and the children's rights to permanent placements, this Court reverses the lower court's conclusion that the mother's parental rights should not be terminated.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the dispositional order of the Circuit

Court of Harrison County entered November 16, 2010, is reversed and this matter is remanded with directions for the entry of an order permanently terminating the parental rights of Anna Y. and for such other proceedings as necessary to permanently place the children in appropriate placements. The mandate of this Court shall issue immediately.

**Reversed and remanded with directions.**