**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **H.K., B.L., and J.K.**

**No. 22-0383** (Kanawha County 21-JA-440, 21-JA-441, and 21-JA-442)

## MEMORANDUM DECISION

Petitioner Mother C.K.[1] appeals the Circuit Court of Kanawha County's April 18, 2022, order terminating her parental rights to H.K., B.L., and J.K.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In August of 2021, the DHHR filed a petition alleging that petitioner emotionally abused and constructively abandoned B.L. The DHHR amended the petition later that month to include additional allegations, most of which concerned petitioner prioritizing her numerous abusive partners over her children and the impact these violent relationships had on the children. At the subsequent preliminary hearing, petitioner testified to seeking domestic violence protective orders ("DVPOs") against three different partners over a fifteen-year period. Petitioner's testimony established that she engaged in a pattern of having the DVPOs lifted to reconcile with the abusive partners, two of whom she married after the DVPOs were dismissed. Petitioner also testified that B.L.'s father, whom petitioner married after having previously obtained a DVPO against him, later went on to sexually abuse then five-year-old J.K. The evidence further established that one of petitioner's abusive partners forced her to give custody of B.L. to a relative, demonstrating petitioner's willingness to choose these inappropriate partners over her children. The circuit court also heard evidence regarding two 2020 Child Protective Services ("CPS") reports alleging that petitioner was mentally unstable and had medically neglected and verbally abused B.L., although petitioner denied these allegations. Lastly, petitioner testified that she currently lived in a two-bedroom home with a new partner, having moved in despite knowing there was not enough room to accommodate her three children. As such, petitioner sent J.K. to live with the maternal

---

[1]Petitioner appears by counsel Rebecca Stollar Johnson. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Heather L. Olcott. Sharon K. Childers appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

grandparents and left B.L. at a treatment facility. Although petitioner admitted the children had witnessed at least one incident of domestic violence and lived in the home during the time the four DVPOs were obtained and the CPS investigations occurred, she adamantly denied that the events, including the sexual abuse suffered by J.K., had any impact on the children. Petitioner also admitted that, prior to the filing of the petition, the DHHR had offered her in-home services, which she refused, stating that, aside from B.L., she and her other children did not need services.

During the adjudicatory hearing in October of 2021, the court took judicial notice of testimony presented at the preliminary hearing, the multiple domestic violence proceedings involving petitioner's various partners, and the other abuse and neglect cases involving petitioner. During the hearing, petitioner recanted portions of her prior testimony but, again, insisted that the children's exposure to domestic violence had no impact on them. The court further considered the results of a psychological evaluation ordered as part of the current proceedings. Notably, the evaluator determined that petitioner's responses were "so defensive as to render the test results invalid." The evaluator further noted that petitioner "perceive[d] little need for behavioral change" and assessed her prognosis for attaining minimally adequate parenting as highly guarded due, in part, to petitioner's "history of interpersonal dysfunction and domestic violence, apparent failure to appropriately address her children's emotional and behavioral needs, failure to cooperate with CPS intervention, and defensive responding."

Ultimately, the court found, among other things, that petitioner chronically placed her needs and the needs of her partners above the needs and safety of her children; failed to protect her children from domestic violence and sexual abuse; had a history of housing instability, noting that her current residence did not have room for all three children; had a life of chaotic relationships, which caused emotional and physical harm to her children; and failed to accept any responsibility for any of the foregoing. Accordingly, the court adjudicated petitioner as an abusing and neglecting parent. The court further denied petitioner's motion for services and visitation due to her continued failure to accept responsibility for her conduct and her prior refusal of services. Lastly, the court granted the guardian's motion for a supplemental psychological evaluation to ensure accuracy as the evaluator did not have access to the amended petition or to the results of a prior psychological evaluation that petitioner submitted to in 2012.

During the dispositional hearing in April of 2022, the court heard testimony from the evaluator who conducted both the 2021 psychological evaluation and the supplemental evaluation. The evaluator testified that petitioner's lack of accountability was more evident in the supplemental evaluation and downgraded petitioner's parenting prognosis to poor, finding that her personality disorders would require dialectical behavioral therapy, which would take a minimum of two years to complete for even a highly motivated individual—which she determined petitioner was not.

The DHHR introduced testimony regarding petitioner's refusal to participate in services when offered and moved to terminate petitioner's parental rights. The guardian joined the motion. Petitioner once again testified but admitted no wrongdoing. The court denied petitioner's motion for a thirty-day continuance to participate in remedial and reunification services and found by clear and convincing evidence there was no reasonable likelihood that petitioner could correct the conditions giving rise to the filing of the petition within the statutory timeframes due to her initial

refusal to participate in services, her ongoing lack of accountability, and her professionally diagnosed personality disorder traits, which would require years of highly motivated dialectical behavioral therapy to address. The court also found that petitioner failed to appreciate how her decisions negatively impacted the children and that reunification was not in the children's best interests. Accordingly, the court terminated petitioner's parental rights to H.K., B.L., and J.K.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner first argues that the DHHR failed to make reasonable efforts to reunify the family, stressing that services were not provided. We find no error. Under West Virginia Code § 49-4-604(c)(7)(A), the DHHR must make reasonable efforts to preserve the family unless the court finds, among other things, that the parent subjected the child to aggravated circumstances, including chronic abuse. Petitioner incorrectly asserts that this exception does not apply to her case and ignores the fact that the circuit court specifically found that she chronically abused her children by exposing them to domestic violence for over a decade, stating that petitioner "engaged in chronic behavior placing her needs and those of her paramours above the needs and safety of her children." As such, the DHHR was not required to make reasonable efforts to preserve the family by providing petitioner with services.

Finally, petitioner argues that, because the DHHR failed to make reasonable efforts to reunify the family, the circuit court erred in terminating her parental rights. According to petitioner, services should have been offered because she admitted to exposing the children to domestic violence, which constituted a substantial step toward rectifying the abuse. However, the record undercuts petitioner's position given that the DHHR offered her services prior to the filing of the petition, yet she refused and insisted that she did not need them. Further, throughout the entirety of the proceedings, petitioner failed to acknowledge that there were any issues that needed addressed, did not admit to any wrongdoing, and adamantly denied that the exposure affected the children. This Court has held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Although petitioner asserts on appeal that the circuit court erred in finding that there was no reasonable

---

[3]All parents' parental rights have been terminated. The permanency plan for H.K. and J.K. is adoption in their respective placements. The permanency plan for B.L. is placement in a specialized foster home or, concurrently, guardianship with a specialized foster family following completion of his residential treatment program.

likelihood that the conditions of abuse could be corrected, her ongoing failure to acknowledge any wrongdoing resulted in making the problem untreatable.[4]

Accordingly, because the circuit court made the requisite findings based upon ample evidence to support termination of petitioner's parental rights, we find no error. *See* W. Va. Code § 49-4-604(c)(6) (permitting a circuit court to terminate parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the child's welfare); *see also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected").

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 18, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: March 7, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[4]At various times in her brief, petitioner also asserts that the DHHR improperly shifted the burden of proof to her, but the record does not support this. Petitioner stresses that she was the only witness the DHHR called at adjudication but ignores the fact that the DHHR submitted ample non-testimonial evidence, including multiple DVPOs and psychological evaluations, in support of her chronically abusing the children by exposing them to domestic violence. Additionally, at disposition, the court heard testimony from the evaluator who conducted petitioner's psychological evaluations. As such, the burden of proof never shifted to petitioner even though this case, in part, relies on her failure to acknowledge any wrongdoing.