**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.C., J.R.-C., and E.R.**

**No. 24-112** (Ohio County CC-35-2023-JA-36, CC-35-2022-JA-69, and CC-35-2022-JA-70)

**MEMORANDUM DECISION**

Petitioner Mother A.R.[1] appeals the Circuit Court of Ohio County's February 5, 2024, order terminating her parental rights to J.C., J.R.-C., and E.R.,[2] arguing that it was error to terminate her parental rights because the case plan was formulated without her input and the DHS did not offer assistance. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In April 2022, the DHS filed a petition alleging that the petitioner had a history of substance abuse and mental health issues. Additionally, the petitioner had recently fled to Ohio to avoid a warrant for her arrest, leaving one-year-old J.R.-C. and three-year-old E.R. home with the father, who previously had his parental rights terminated to another child. The home was in deplorable condition and did not have hot water or electricity. Once located by law enforcement, the petitioner was briefly incarcerated for possession of illicit substances and violating the terms of her probation, including testing positive for THC, cocaine, buprenorphine, methamphetamine, methylenedioxymethamphetamine, and fentanyl. The petitioner later gave birth to J.C. in February 2023, and the DHS filed an amended petition alleging that the child was born drug-affected. At the time of the child's birth, the petitioner tested positive for fentanyl and THC. The petitioner stipulated to the allegations in both petitions, and the circuit court adjudicated her as an abusing and neglecting parent, finding all three children to be abused and neglected.

---

[1] The petitioner appears by counsel Michael A. Kuhn. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Tyler L. Cline appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

The circuit court proceeded to disposition in November 2023 and heard testimony from a licensed psychologist who evaluated the petitioner for parental fitness. The psychologist diagnosed the petitioner with alcohol use disorder, cannabis use disorder, major depressive disorder, unspecified anxiety disorder, and anti-social personality traits. He did not believe that the petitioner had the parental capacity to care, protect, and change in order to adequately provide for the children. Nevertheless, the psychologist recommended that the petitioner participate in therapy, anger management, and substance abuse treatment. Child Protective Services ("CPS") workers testified and reported that the petitioner did not follow any of the psychologist's recommendations. The workers went on to explain the petitioner's failure to participate in the case despite implementation of a case plan. They set up parenting classes and drug screening, but because of the petitioner's inconsistent and positive drug screens, visitation services could not be initiated. Therefore, the petitioner had not seen the children since their removal. The CPS workers indicated their intent to agree upon an improvement period; however, the petitioner only attended two multidisciplinary team ("MDT") meetings, leaving one halfway through. The potential agreement for an improvement period was discarded due to the petitioner's noncompliance, particularly by refusing to sign documents that would have aided the workers' efforts in setting up additional services. One CPS worker was able to communicate with the petitioner occasionally over the phone; however, the petitioner "was angry" when given directions for the steps she needed to take toward reunification. Although the petitioner completed a detoxification program, she tested positive for illicit substances upon her release and did not submit to any further substance abuse treatment. The petitioner's drug screens were entered into evidence and indicated that she screened eight times throughout the proceedings, with six of those screens returning positive for fentanyl, and all of them positive for alcohol and THC. Therefore, considering the petitioner's lack of cooperation and persisting substance abuse, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was necessary for the welfare of the children to terminate the petitioner's parental rights. The court terminated the petitioner's parental rights to all three children. It is from the dispositional order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner first assigns error to the circuit court's decision to terminate her parental rights when she was not permitted to assist in the DHS's formulation of the case plan. While the petitioner is correct that West Virginia Code § 49-4-408(b) requires that the DHS convene an MDT to develop a case plan and that "[p]arents, guardians, or custodians shall participate fully in the development of the case plan," she ignores her willful refusal to participate in this process. Specifically, it was the petitioner's refusal to participate in MDT meetings that thwarted the DHS's ability to create the case plan with her input, and we note that a parent's refusal to cooperate constitutes a valid basis for termination of parental rights. *See* W. Va. Code § 49-4-604(d)(2) (establishing that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when "[t]he abusing parent . . . [has]

---

[3] The father's parental rights were terminated, and the permanency plan for the children is adoption by kinship placement.

willfully refused . . . to cooperate in the development of a reasonable family case plan"). Because the evidence shows that the petitioner willfully failed to participate in the pertinent MDT meetings, the petitioner is not entitled to relief. [4]

The petitioner further argues that it was error for the circuit court to terminate her parental rights when the DHS did not offer assistance. In support of this contention, the petitioner cites West Virginia Code § 49-1-105[5] for the proposition that "the CPS process is meant to be a collaborative process whereby a CPS worker assists the child and parent as they navigate the CPS process." The petitioner, however, argues that she received "very little assistance." Upon our review, we disagree. The record reveals that the DHS made reasonable efforts to return the children to the petitioner's custody in accordance with West Virginia Code § 49-4-604(a), including setting up parenting classes and drug screens, which would have led to visitation services with the children had the petitioner produced negative screens. Moreover, the court found that the petitioner frustrated the DHS's efforts by failing to sign documents that would assist the DHS in setting up certain additional services. Therefore, there is simply no evidence that supports the petitioner's argument, and we see no error.

The petitioner finally argues that the circuit court erred by terminating her parental rights without considering a less restrictive dispositional alternative. However, we have held that circuit courts may terminate parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). The court specifically found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that the children's welfare required termination, findings the petitioner does not challenge on appeal. As such, we see no error based on the evidence presented regarding the petitioner's conduct throughout the proceedings.

Accordingly, we find no error in the decision of the circuit court, and its February 5, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2025

---

[4] In support of this assignment of error, the petitioner further relies on Rule 37 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. However, the petitioner's reliance is misplaced, as Rule 37 explicitly applies only "[*i*]*f an improvement period is ordered.*" (Emphasis added). Accordingly, any argument predicated on this rule is without merit.

[5] West Virginia Code § 49-1-105 provides that "[i]t is the purpose of this chapter to provide a system of coordinated child welfare . . . services for the children of this state," and lists certain requirements for the child welfare system in order to fulfill that purpose.

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV