**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.T. and G.T.**

**No. 24-457** (Ohio County CC-35-2023-JA-10 and CC-35-2023-JA-11)

**MEMORANDUM DECISION**

Petitioner Mother W.T.[1] appeals the Circuit Court of Ohio County's July 15, 2024, order terminating her parental rights to D.T. and G.T., arguing that termination was erroneous.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In February 2023, the DHS filed a petition alleging that the petitioner abused and neglected the children by failing to protect G.T. from sexual abuse and exposing the children to domestic violence. The DHS alleged that G.T. disclosed that she had been sexually abused by the petitioner's boyfriend, L.P., and that L.P. was physically violent with the petitioner and the children. Following a fight between L.P. and the petitioner, the petitioner and the children began living with the petitioner's new boyfriend, R.S., who was later discovered to be a registered sex offender. After being informed of R.S.'s sex offender status, the petitioner moved the children into a hotel but later allowed R.S. to stay at the hotel with her and the children. The DHS also alleged that the petitioner had previously relinquished her parental rights to two other children after the DHS initiated proceedings based on her failure to protect the children from physical and sexual abuse. At the request of the petitioner's counsel, the court ordered that the petitioner undergo a psychological evaluation to determine whether the petitioner had sufficient intellectual capacity to be deemed

---

[1] The petitioner appears by counsel John M. Jurco. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Joseph J. Moses appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For the purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

competent. The psychological evaluation resulted in a diagnosis of borderline intellectual functioning, but the petitioner was determined to be competent.

At an adjudicatory hearing in April 2023, the petitioner stipulated to "expos[ing] [them] to sex offenders and violent persons who abused them." The court accepted the stipulation, found that the children were abused and neglected, and adjudicated the petitioner as an abusing and neglecting parent. In May 2023, the court granted the petitioner a post-adjudicatory improvement period. At a status hearing in June 2023, the DHS reported that the petitioner was attending parenting classes and weekly supervised visits with the children. Further, the petitioner was looking into therapy and seeking new housing. However, the petitioner continued to reside with R.S. At a status hearing in August 2023, the DHS informed the court that the petitioner was no longer living with R.S., but that her studio apartment was not big enough for her and the children. Further, the DHS stated that the petitioner had not been participating in therapy, as required by the terms of her improvement period. Despite this lack of progress, the court extended the petitioner's improvement period in November 2023.

The circuit court held a series of dispositional hearings in April and May 2024. At a hearing in April 2024, the court heard from the clinical psychologist who conducted the petitioner's parental fitness evaluation. The psychologist testified that the petitioner's intellectual functioning did not prevent her from caring for herself and her children, that she had a guarded prognosis for improved parenting, and that she stated a belief of being penalized for L.P.'s actions. At the next hearing on May 2, 2024, the DHS presented evidence of the petitioner's failure to obtain suitable housing; her inability to progress past supervised visitation during her improvement period; and her continued involvement with R.S. during the early stages of the proceedings, including her lying to the DHS about his presence at the hotel with the children. The court also received evidence that the petitioner had completed a course on anger management and that she had made progress in parenting and adult life skills courses. Further, a service provider indicated that the petitioner was in the process of moving into a new apartment at the time of the hearing.

The final dispositional hearing was conducted on May 16, 2024. At this hearing, the petitioner presented evidence of her new residence, including a copy of the lease agreement and photographs of the residence. The petitioner testified that she could not work due to a learning disability and that she had moved into the new residence a little over a week prior. She also testified regarding the prior abuse and neglect case involving the sexual abuse of her child by a man living with them. Regarding the allegations underlying the instant proceedings, the petitioner stated that L.P. was physically abusive, but that G.T. only disclosed L.P.'s sexual assault in January 2023, a month after they stopped living with him. The petitioner also confirmed that they moved in with R.S., who she later left after discovering he was a sex offender. Despite this knowledge, the petitioner confirmed that she had moved back in with R.S., hid this fact from the multidisciplinary team, and refused alternative living arrangements offered by the DHS. Following this testimony, the court found that the petitioner had a history of unstable and inadequate housing and of exposing her children to sex offenders, which resulted in two separate abuse and neglect proceedings being brought against her. The court further found that the petitioner had not acquired appropriate housing as required by the terms of her improvement period, that her most recent residence was only put forward "now in the 11th hour," and that she had been dishonest with the DHS regarding her contact with R.S. As a result, the court found that returning the children to the petitioner's care

placed them at substantial risk of being further exposed to sex offenders. Based on these findings, the court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of the petitioner's parental rights was necessary for the children's welfare. Accordingly, the court entered a dispositional order terminating the petitioner's parental rights to the children.[3] It is from this order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Given that the petitioner challenges the termination of her parental rights, we note that West Virginia Code § 49-4-604(c)(6) authorizes a circuit court to terminate the parental rights of an abusing parent "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be corrected in the near future and, when necessary for the welfare of the child." The petitioner argues that the evidence presented to the circuit court was insufficient to make such findings and lists a number of reasons she believes the court should have imposed a less restrictive alternative, including that she participated in therapy and was not incarcerated or a drug user. Critically, however, the petitioner does not challenge any of the factual findings upon which the court concluded that termination was proper. This includes the petitioner's history of unstable and unsuitable housing prior to and during the pendency of the underlying proceedings, her repeated exposure of the children to individuals she knew were sex offenders, her dishonesty with the DHS, and the risk that the children would be further exposed to sex offenders if returned to her care. The circuit court specifically found that the petitioner did not comply with the terms of her improvement period, which this Court has stated is "a statutorily-recognized basis upon which this court regularly affirms termination of parental rights." *In re K.L.*, 247 W. Va. 657, 667, 885 S.E.2d 595, 605 (2022) (citing W. Va. Code § 49-4-604(c)(6) and (d)(1)–(3)). We therefore conclude that the circuit court did not err in finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination was necessary for the children's welfare and, accordingly, conclude that the petitioner has not established that the circuit court erred in terminating her parental rights rather than using a less restrictive alternative. *See* Syl. Pt. 5, in part, *In re Kristen Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) ("Termination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that the conditions of neglect or abuse can be substantially corrected." (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))); *In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part ("[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." (quoting *In re R.J.M.*, 164 W. Va. at 496, 266 S.E.2d at 114, Syl. Pt. 1, in part)).[4]

---

[3] The circuit court also terminated the parental rights of the children's father. The permanency plan for G.T. is adoption in her current placement. D.T. has reached the age of majority.

[4] In further support of her argument, the petitioner asserts that, under Syllabus Point 4 of *In re Maranda T.*, 223 W. Va. 512, 678 S.E.2d 18 (2009), the DHS should have made a thorough

3

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 15, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: September 30, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

---

effort to determine whether she could adequately care for the children with long-term assistance. That syllabus point, in relevant part, states as follows:

> Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance.

*Id.* However, in making this assertion, the petitioner ignores the psychologist's testimony that her level of intellectual functioning was adequate to care for herself and the children. As a result, the petitioner is entitled to no relief on this basis.

4