# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **F.P.**

**No. 15-0359** (Raleigh County 13-JA-137-B)

**FILED**

November 23, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.P., by counsel Winifred L. Bucy, appeals the Circuit Court of Raleigh County's March 19, 2015, order terminating her parental rights to F.P. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Colleen Brown-Bailey, filed a response on behalf of the child in support of the circuit court's order. Michael P. Cooke, the guardian for petitioner, filed a response in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her post-adjudicatory improvement period, and in terminating her parental rights.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner's daughter, F.P., was born on March 24, 2013, prematurely and with special health needs. As such, the child remained hospitalized for several weeks after her birth. Eventually, F.P. was transferred to another hospital for heart surgery. In June of 2013, the DHHR filed an abuse and neglect petition alleging that petitioner abused and neglected F.P. because she failed to visit F.P. at the hospital or to participate in her care. The petition further alleged that petitioner was present for F.P.'s heart surgery but did not visit with her for two days following the surgery and spent only thirty minutes with her. According to hospital staff, when petitioner visited F.P. following the heart surgery, she appeared to be under the influence of some substance, fell asleep twice in a five minute period, and left after approximately thirty minutes. The petition alleged that the hospital social worker expressed concerns that petitioner was not bonding with F.P., that she was not learning how to care for her special needs, and that there was no one there to hold F.P. The petition alleged that when petitioner did visit F.P., the visits were

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

short, she did not always participate in F.P.'s care, and the hospital had difficulty contacting her regarding her care.

In July of 2013, the circuit court held a preliminary hearing, and based on the circuit court's finding of petitioner's severe lack of involvement, it granted the DHHR custody of F.P. Petitioner and the father were ordered to undergo psychological evaluations. The circuit court then continued the hearing. In August of 2013, the multidisciplinary team ("MDT") met to discuss visitation and petitioner and the father were granted supervised visitation with F.P. once per week.

In October of 2013, the circuit court held the continued preliminary hearing which petitioner waived. The circuit court also appointed petitioner a guardian ad litem and ordered her to undergo a psychiatric evaluation. In August of 2014, the circuit court held an adjudicatory hearing and adjudicated petitioner as neglecting F.P.[2] Petitioner advised that she and the father did not visit F.P. regularly because the father worked odd jobs and she drove him to work. She also told the circuit court that they did not have the money to drive back and forth to visit F.P. on a regular basis. The circuit court noted that poverty was one element of petitioner's situation but that it did not explain or justify her behavior during the relevant period when her premature infant with significant health issues required the care of her parents. Petitioner motioned the circuit court for a post-adjudicatory improvement period.

In September of 2014, the circuit court granted petitioner's motion for a post-adjudicatory improvement period as an opportunity to rectify her neglect of F.P. Subsequently, the MDT met to develop the terms of petitioner's improvement period; however, she did not appear for two scheduled MDT meetings. The DHHR met with petitioner on a later date to discuss the terms of the improvement period. The terms included petitioner enrolling in and successfully completing an inpatient substance abuse treatment program, following the recommendations of her psychological evaluation, obtaining adequate knowledge and skill to care for F.P., and working with a service provider to learn parenting and adult life skills. Following the MDT meeting, petitioner refused to enroll in an inpatient substance abuse program. She informed the service provider that she did not need substance abuse treatment.

In January of 2015, the DHHR moved to terminate petitioner's improvement period and terminate her parental rights. In response, petitioner filed a motion to extend her improvement period. The circuit court held an evidentiary hearing on petitioner's motion. The testimony presented at the hearing indicated that petitioner failed to cooperate with the terms of her improvement period, given that she failed to enroll in and successfully complete any inpatient substance abuse treatment. Additionally, petitioner failed to enroll in the Raleigh County day report substance abuse classes. The DHHR service providers testified that petitioner failed to attend visitations scheduled to observe her parenting skills and interaction with F.P., and that when petitioner attended supervised visits with F.P., she was not bonded with petitioner. The

---

[2]The circuit court adjudicated petitioner as a neglectful parent; however, West Virginia Code § 49-1-3(2) defines an "abusing parent" as "a parent, guardian or other custodian . . . whose conduct, as alleged in the petition charging child abuse or neglect, has been adjudged by the court to constitute child abuse or neglect."

DHHR service providers further testified that petitioner's visitations were reduced from two hours to one hour because F.P. became upset during visits with petitioner. The DHHR service providers testified that petitioner was typically late for visitations and left early. According to the DHHR, petitioner missed several visits with no explanation for her absence. As such, the DHHR recommended the termination of petitioner's parental rights. The circuit court continued the hearing.

In February of 2015, the circuit court held an additional evidentiary hearing on petitioner's motion. The DHHR provided testimony that petitioner and the father had relocated to the State of Texas for the father's new job and petitioner missed approximately four weeks of visits with F.P. At the close of the evidence, the circuit court denied petitioner's motion to extend her improvement period, terminated petitioner's improvement period, and terminated her parental rights upon finding that petitioner did not comply with the terms of her improvement period and that she had disengaged as a parent to F.P. from birth until the present. In March of 2015, the circuit court entered its order terminating petitioner's improvement period and her parental rights to F.P. Petitioner appeals from this order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, we find no error in the circuit court's denial of petitioner's motion to extend her post-adjudicatory improvement period, terminating that improvement period, or in terminating her parental rights.

First, we finds no merit in petitioner's argument that the circuit court erred in terminating her improvement period rather than granting her an extension of the same. Petitioner contends that the abuse and neglect petition was filed while F.P. was hospitalized and, as a result, petitioner never had an opportunity to parent her child. We disagree and find that the circuit court properly terminated petitioner's improvement period.

We have previously held that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements; it is also within the court's discretion to terminate the improvement period before the [applicable] time frame has expired if

3

the court is not satisfied that the [parent] is making the necessary progress." Syl. Pt. 2, in part, *In re: Lacey P.*, 189 W.Va. 580, 433 S.E.2d 518 (1993). Moreover, West Virginia Code § 49-6-12(h) requires that the circuit court terminate an improvement period upon a finding that the petitioner has failed to fully participate in its terms.

The record on appeal demonstrates that petitioner did not fully comply with the terms of her improvement period. Specifically, petitioner failed to enroll in and successfully complete any inpatient substance abuse treatment program. In fact, petitioner refused to even to fill out an application for such a program. Rather, she informed the service provider that she did not need substance abuse treatment. Additionally, petitioner failed to enroll in the Raleigh County day report substance abuse classes, despite two scheduled intake appointments. Petitioner also failed to attend visitations scheduled to observe her parenting skills and interaction with F.P., and when petitioner attended supervised visits with F.P., she did not bond with petitioner. Petitioner's visits with F.P. were reduced from two hours to one hour because F.P. became upset during petitioner's visits; petitioner missed several visits with no explanation for her absence; and she was typically late for visits. Based upon petitioner's failure to fully participate with the terms of her improvement period, we find that the circuit court properly terminated her improvement period upon the DHHR's motion and denied her request for an extension thereof.

As to petitioner's argument that the circuit court erred in terminating her parental rights, we find no error. As addressed above, the evidence established that petitioner did not comply with the services the DHHR offered in this abuse and neglect proceeding. Further, the circuit court noted that petitioner failed to remedy or improve the circumstances present from the beginning of the abuse and neglect proceeding and completely disengaged from F.P.; failed to prioritize F.P. from her birth; failed to visit with or build a relationship with F.P.; failed to learn how to care for F.P.'s special health care needs; and refused to enroll in any inpatient substance abuse program. As such, the circuit court found that petitioner remains a stranger to F.P.

Pursuant to West Virginia Code § 49-6-5(b), "'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' shall mean that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Additionally, pursuant to West Virginia Code § 49-6-5(b)(3), "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" includes a situation in which the parent has not

> responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Based on the evidence set forth above, it is clear that the circuit court was presented with sufficient evidence upon which to base this finding, as well as the finding that termination of petitioner's parental rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings.

4

Further, we have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). While petitioner argues that she was never given the opportunity to parent F.P., the circuit court's finding that she demonstrated a total disengagement from F.P. illustrates that petitioner failed in two years to remedy or improve the circumstances present from the beginning of the abuse and neglect proceeding. As such, it was not error for the circuit court to terminate petitioner's parental rights.

Contrary to petitioner's argument that a less restrictive dispositional alternative existed, the circuit court had no option but to terminate petitioner's parental rights. Pursuant to West Virginia Code § 49–6–5(a)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and that termination of parental rights is necessary for the child's welfare. Further, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§ ] 49–6–5 . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§ ] 49–6–5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.,* 227 W.Va. 558, 712 S.E.2d 55 (2011). As such, the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court and its March 19, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:
Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II