**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.P. and D.C.-P.**

**No. 22-0335** (Cabell County 18-JA-162 and 18-JA-163)

**MEMORANDUM DECISION**

Petitioner Father D.P.[1] appeals the Circuit Court of Cabell County's March 31, 2022, order terminating his parental rights to K.P. and D.C.-P.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In August of 2018, the DHHR filed a petition alleging that petitioner was incarcerated and the children were neglected while in the mother's care. The DHHR alleged that petitioner was arrested in January of 2018 and incarcerated for possession with intent to deliver heroin after 178 grams of heroin was discovered in the family home. Following petitioner's arrest, the mother and children vacated the home; the mother was living "on the streets," and the children had been living with her acquaintance. The DHHR alleged that then-seven-year-old D.C.-P. suffered educational neglect and developmental delays and then-four-year-old K.P. had sexualized behaviors, which prompted an investigation. According to the DHHR, petitioner failed to provide any financial or emotional support for the children. Later in 2018, the circuit court adjudicated the children as neglected children and the mother as an abusing parent but made no findings regarding petitioner's conduct. The mother was granted an improvement period, and the children were returned to her physical custody in November of 2019.

In January of 2020, the DHHR filed an amended petition alleging that the mother's live-in boyfriend injured K.P. The DHHR alleged that the mother had actively hidden her relationship with the boyfriend from workers because she was aware he was inappropriate and that the circuit

---

[1]Petitioner appears by counsel Steven T. Cook. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Steven R. Compton. Ryan Turner appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

court previously ordered her not to allow him to have contact with the children.[3] The DHHR proffered that petitioner remained incarcerated, had taken no action to protect the children from the mother's boyfriend, and failed to provide any emotional or financial support of the children. Thereafter, the mother generally failed to participate in the proceedings, and the circuit court terminated her parental rights in early 2021.

In January of 2021, petitioner was released from incarceration on parole. He testified at a hearing in January of 2021 that he last talked to the children in "August or September of [2018]" but alleged he requested permission to speak to the children while he was incarcerated. At a hearing in February of 2021, petitioner stipulated to the allegations in the petition, and the circuit court adjudicated him as an abusing parent. By a motion filed that same month, petitioner moved for an improvement period. By this time, the children had already spent twenty-eight months in foster care.

The court held two more dispositional hearings in April and November of 2021 and then issued an order in March of 2022, terminating petitioner's parental rights. In its order, the court found that while petitioner was incarcerated, he "was aware of the abusive situation the children were in but failed to report the same." In his testimony, petitioner admitted that, prior to his incarceration, he sold controlled substances from his home in which the children were also living. Petitioner asserted that he sold drugs to support his own addiction but also admitted that he was unemployed and used those funds to support the family. Nevertheless, petitioner did not believe that he had been abusive or neglectful of the children other than by his incarceration. The court found that petitioner had not provided any financial support to the children, during or after his incarceration, despite having the funds to do so. The court found that petitioner had not attended any classes or therapy to aid and develop his parenting skills nor did he attend any of his children's therapeutic treatments. Finally, the circuit court found that the children had been in the DHHR's custody for a total of thirty months and had not seen petitioner in approximately four years. The court found that as a result of the children's neglect, they suffered from developmental delays, psychological trauma, attention deficient hyperactive disorder, and educational difficulties. Evidence showed that the children, especially K.P., demonstrated "severe behavior issues," which had improved in the most recent placements. The guardian reported that K.P. "would not recognize [petitioner] at all and has no real memory of him" and D.C.-P. "would likely not recognize [petitioner.]" Accordingly, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of neglect or abuse and that it was necessary for the children's welfare to terminate his parental rights. Petitioner now appeals the circuit court's March 31, 2022, order terminating his parental rights to K.P. and D.C.-P.[4]

---

[3]While the DHHR's petition failed to state why the mother's boyfriend was not to be around the children, the record provides that the boyfriend was suspected of sexually abusing K.P.

[4]As stated previously, the mother's parental rights were terminated during these proceedings. According to the parties, the permanency plan for the children is adoption in their

(continued . . .)

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner first argues that the circuit court erred in denying his motion for an improvement period because, in his view, he had already remedied the conditions of abuse and neglect when he was released from incarceration. We disagree, as petitioner's incarceration was not the only issue for which he was adjudicated and, further, because the statutory timeframes for improvement periods were fully exhausted in this matter. Specifically, West Virginia Code § 49-4-610(9) prohibits the granting of improvement periods when such an improvement period would cause the children to remain in foster care in excess of fifteen of the most recent twenty-two months, unless "compelling circumstances" permit the granting of the improvement period. In this instance, the children had already been in foster care for twenty-eight months when petitioner filed his first motion for a post-adjudicatory improvement period in February of 2021.[5] The circuit court heard evidence that, after petitioner's four-year absence, the children did not remember him, and the record is devoid of any evidence of compelling circumstances. Thus, we find no error in the circuit court's denial of petitioner's motion for an improvement period.

Petitioner also argues that the circuit court erred in terminating his parental rights. He again asserts that he remedied the conditions of abuse and neglect, namely his incarceration, and that he could have reunified with the children at the dispositional hearing. We find his argument unavailing. Critically, petitioner's incarceration was not the sole basis of his adjudication, as he stipulated to multiple conditions of abuse and neglect, including failure to protect the children and failure to provide for them. As such, his argument that he corrected the conditions at issue simply by being released from incarceration is without merit. Further, the circuit court found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and the record supports that finding. *See id.* § 49-4-604(c)(6) (authorizing the termination of parental rights upon said findings). The evidence shows that the children no longer recognized him as a parent, and he failed to recognize his abuse and neglect of the children. *See id.* § 49-4-604(d) (providing that there is no reasonable likelihood that the conditions of neglect and abuse can be substantially corrected when the parent has demonstrated "an inadequate capacity to solve the problems of abuse or neglect on their own or with help"). We have held that "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Here, where the children no longer knew petitioner as a parent due to his absence and had spent a significant period of time in foster care awaiting permanency, we find no error in the circuit court's decision to terminate his parental rights. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558,

---

respective placements. At the time of briefing, the parties alleged that K.P. was participating in her second residential treatment program to resolve her trauma-related behaviors and a potential adoptive placement would be pursued following her completion of that program.

[5]The children were in their mother's custody for approximately two months in the middle of the proceedings and that time is not counted against petitioner in this calculation.

712 S.E.2d 55 (2011) (holding that "[t]ermination of parental rights . . . may be employed . . . when it is found that there is no reasonable likelihood . . . that the conditions of neglect or abuse can be substantially corrected").

Finally, petitioner argues that the DHHR failed to make reasonable efforts to reunify the family, and the circuit court erred in terminating his parental rights in light of the limited effort of the DHHR to reunify him with the children. Indeed, West Virginia Code § 49-4-601(d) requires the DHHR to "provide supportive services in an effort to remedy circumstances detrimental to a child" immediately upon the filing of the petition, and the circuit court must consider "whether or not the [DHHR] made reasonable efforts, *with the child's health and safety being the paramount concern*, to preserve the family" prior to terminating a parent's parental rights. *See id.* § 49-4-604(c)(6)(C)(iii) (emphasis added). Petitioner was incarcerated for the majority of the proceedings and was unable to participate in remedial services until his release in January of 2021. The court found that petitioner did not initiate contact with the DHHR until August of 2021, months after the first dispositional hearing was held. Upon our review, we find the circuit court appropriately considered the DHHR's efforts, the children's need for permanency and their therapeutic needs, as well as petitioner's actions during the case, and, therefore, did not err in terminating his parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 31, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn