**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **S.R.**

**No. 22-908** (Calhoun County CC-07-2022-JA-5)

**MEMORANDUM DECISION**

Petitioner Father B.K.[1] appeals the Circuit Court of Calhoun County's November 14, 2022, order terminating his parental rights to S.R.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In January 2022, the DHS filed a petition alleging that petitioner had recently assumed custody of the child following a proceeding in Texas involving the mother six months prior. The child had suffered extensive sexual abuse in the mother's care and was now reportedly acting out in school, including running from, hitting, kicking, and biting staff. Petitioner admitted to the DHS that he had not followed through with the child's medical appointments to address these issues. During a visit to the home, a Child Protective Services ("CPS") worker knocked on the door and viewed the child come to the bedroom window multiple times, leading the CPS worker to suspect the child was locked in her room. After the child was later suspended from school due to her continued untreated behavioral issues, CPS made an unannounced visit to the home. Although petitioner denied locking the child in her room, CPS observed a lock on the outside of the child's door, and the child later confirmed that petitioner would lock her in her room when he left the

---

[1]Petitioner appears by counsel Daniel F. Minardi. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. Counsel Erica Brannon Gunn appears as the child's guardian ad litem. Intervenor S.B. appears by counsel Daniel K. Armstrong.

Additionally, pursuant to West Virginia Code § 5F-1-2, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated, effective January 1, 2024, and is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

home and at night. During another unannounced visit, CPS found the then-six-year-old child home alone. Based on the foregoing, the DHS alleged that petitioner abused and neglected the child.

The court then proceeded with several adjudicatory hearings, including a hearing in May 2022, where the court took in camera testimony from S.R., who was seven years old at the time. The child testified that petitioner "locks [her] in the bedroom . . . [u]ntil he wakes up" which left her with no access to a bathroom, food, or water. Further, the child stated that petitioner would lock her in the bedroom and then leave the home. According to the child, petitioner hurt her by spanking her bottom, which left marks, and by physically throwing her into her bedroom. The child also indicated that she did not like petitioner because of his conduct.

In June 2022, petitioner testified and admitted that, with the exception of one intake appointment at her school, he had not taken the child to any mental health appointments since obtaining custody of her despite recognizing that she has "serious mental health needs." Petitioner denied locking the child in her room and indicated that he had changed the locks on the bedroom doors in his home, which "were flipped backwards." The court also heard from a CPS worker, who testified that the child disclosed petitioner would lock her in her room and leave, noting that she could see petitioner's parking spot from her bedroom window and knew he had left while she was locked inside. The CPS worker also confirmed that petitioner failed to obtain mental health treatment for the child with the exception of continuing her on medications she was prescribed prior to being placed in his custody. Finally, Loretta Smith, a service provider working with Calhoun County schools, testified to the child's behavioral issues in school and her efforts to assist petitioner. According to Ms. Smith, after petitioner received initial resources, he became aggressive, "did not want us to come to his home," and would not participate in further services. The witness indicated that petitioner did not accept responsibility for his conduct and, instead, "blamed the school" and "was not interested in any kind of services that would benefit his daughter." Ms. Smith also testified to an incident in which she believed the child was locked in her room, as she saw the child come to her bedroom window three times but never emerge from her room.

Following the adjudicatory hearings, the court issued an order in which it concluded that petitioner "committed both physical and emotional abuse of [S.R.] by locking her in her room, without food, water or access to the bathroom, on multiple occasions while he would be sleeping, away from the home, or playing video games." Further, the court found that petitioner neglected the child's medical and mental health needs "by failing to take the child for mental health treatment and ensuring that she had her medication, despite being aware of her extraordinary mental health needs." Accordingly, the court found that petitioner was an "abusing parent" and the child was abused and neglected.

In September 2022, the court held a dispositional hearing, during which petitioner moved for an improvement period. Petitioner also testified and stated, "I do not believe I abused or neglected" the child. Claiming that the court "has not heard the correct sides of each story," petitioner went on to state, "What I'm being told is, take accountability for something to get this improvement period" and that he needed to "start blaming [the child] for her actions; not blaming [himself]" or any other individuals. Petitioner also explained that he did not believe the child's statements were credible. Petitioner further admitted that he was not currently compliant with

offered services. Ultimately, the court denied petitioner's motion for an improvement period, finding that he failed to acknowledge the conditions of abuse and neglect at issue and was not compliant with services. Based on the evidence, the court found that there was no reasonable likelihood petitioner could substantially correct the conditions at issue and that the child's welfare required termination of his rights. As such, the court terminated petitioner's parental rights to the child.[3] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner argues that the circuit court erred in adjudicating him upon insufficient evidence. To support this argument, petitioner challenges the circuit court's credibility determinations and weighing of the evidence by pointing to his own self-serving testimony or to evidence that is immaterial. For example, petitioner makes much of the fact that he took the child for treatment with a primary care physician, while ignoring the fact that he *admitted* to failing to secure treatment for the child's mental health issues. We refuse to disturb the circuit court's findings in regard to credibility and the weight of the evidence. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact.").

Contrary to petitioner's argument, the court was presented with sufficient evidence of his abuse and neglect of S.R. As set forth above, the court heard from the child and other witnesses that petitioner would lock the child in her bedroom at night and at times when he left the residence, leaving her without access to food, water, or a bathroom. That petitioner later "switched" the locks has no bearing on whether he engaged in these extreme practices, nor did it prevent him from continuing to abuse the child through other means. Further, petitioner admittedly neglected the child's mental health, which resulted in severe behavioral issues that impacted her education. Petitioner also argues that his adjudication for physical and emotional abuse was in error because the petition did not allege either type of abuse. On the contrary, the petition explicitly alleged that petitioner locked the child in her bedroom, and the court found that *by locking her in the room*, he subjected her to both physical and emotional abuse. As such, it is clear the petitioner's adjudication was not in error, given that the court adjudicated him for the exact conduct that was set forth, in detail, in the DHS's petition.[4] Because the evidence below was more than sufficient upon which to base petitioner's adjudication, we find no error. *See* Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (requiring the DHS to prove "conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence]").

---

[3]According to the DHS, the proceedings regarding the mother are ongoing. The permanency plan for the child is legal guardianship with a relative.

[4]Petitioner further alleges that the circuit court erred in adjudicating him of physical abuse related to the child's disclosure of corporal punishment because the petition made no mention of corporal punishment. However, as explained above, the circuit court had ample evidence upon which to adjudicate petitioner for conditions of abuse and neglect that were alleged in the petition. Accordingly, we decline to address this argument on appeal.

Finally, petitioner argues that the court erred in denying his motion for an improvement period and in terminating his parental rights. However, at disposition, petitioner refused to admit he had engaged in any abusive or neglectful conduct; blamed multiple individuals for the child's behavior, including the child and the school; and admitted that he was not compliant with the services he had been offered. As we have explained, "[f]ailure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). As such, it is clear that denial of an improvement period was warranted. Further, this refusal supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect. *See* W. Va. Code § 49-4-604(d)(3) (providing that failure to "[r]espond[] to or follow[] through with a reasonable family case plan" constitutes a situation in which there is no reasonable likelihood conditions can be corrected). Because the court had ample evidence upon which to base the findings necessary for termination of petitioner's parental rights, we find no error in the court's decision not to impose a less restrictive dispositional alternative. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood conditions of abuse and neglect can be substantially corrected in the near future and when necessary for child's welfare); *see also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect and abuse can be substantially corrected").

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 14, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn