**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.L.**

**No. 23-111** (Preston County 22-JA-83)

**MEMORANDUM DECISION**

Petitioner Mother L.K.[1] appeals the Circuit Court of Preston County's February 14, 2023, order terminating her parental and custodial rights to R.L.,[2] arguing that the court would not have been required to terminate her rights if the child had been placed with a relative. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2022, the DHS filed a petition alleging that petitioner's parental rights to seven older children were previously involuntarily terminated upon issues of substance abuse, housing instability, unsanitary living conditions, and failure to provide appropriate prenatal care, among other issues. In regard to R.L., the petition alleged that petitioner tested positive for amphetamine upon admission to deliver the child and that medical personnel suspected she abused drugs while in the hospital. Further, petitioner failed to obtain prenatal care for R.L. and was not participating in a drug treatment program. During the preliminary hearing, the guardian informed the court that petitioner's mother and the child's aunt "have filled out packets to be considered as potential placements with the Department." The court then required petitioner within two days to "provide your counsel with a list of people that you would like to be considered as possible kinship

---

[1] Petitioner appears by counsel Kristen D. Antolini. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. Counsel Hilary M. Bright appears as the child's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

placement" so that the list could be provided to the DHS in order to "do their due diligence to do home studies."

The following month, the DHS filed a document summarizing their diligent efforts to identify possible relative placements for the child. This included the two relatives that petitioner identified at the preliminary hearing. However, at the adjudicatory hearing in December 2022, the DHS explained that the aunt had been excluded from consideration for placement because petitioner and the father were living at the aunt's home address at the time the petition was filed and were still using the aunt's mailing address. The record also indicates that the DHS later explained to the circuit court that placement with the maternal grandmother was inappropriate because of her history with the parents and some of petitioner's older children. According to the DHS, the grandmother previously housed the parents and three older children and, "at one point . . . kicked them out, [and] lock[ed] the door when it was below freezing temperatures," resulting in the parents and children being left in a vehicle.

In December 2022, the court held an adjudicatory hearing. Petitioner failed to appear, but was represented by counsel. Based on evidence of the prior involuntary termination of petitioner's parental rights to the older children, her continued drug abuse as demonstrated by failed screens, and her refusal to submit to drug screens as ordered, the court adjudicated petitioner of abusing and neglecting R.L.

The court held a final dispositional hearing in February 2023. Petitioner again failed to appear, though she was represented by counsel. Petitioner's counsel indicated that she had not had any contact with petitioner since the last hearing. The DHS presented testimony that petitioner had not submitted to a drug screen since December 1, 2022. A Child Protective Services ("CPS") worker also testified to her attempts to contact petitioner, which were unsuccessful. According to the CPS worker, she had not had contact with petitioner since the adjudicatory hearing. The CPS worker also testified that petitioner had not inquired about the child, failed to provide any support for the child, and had not admitted to having a substance abuse issue. Based on the evidence, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her rights was necessary for the child's welfare. Accordingly, the court terminated petitioner's parental and custodial rights.[3] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner presents an entirely speculative argument in which she assumes that, if the child had been placed with a relative, the court would not have been required to terminate her parental and custodial rights. Petitioner's argument is predicated on her assertion that the DHS failed to comply with West Virginia Code § 49-4-601a, which provides, in relevant part, that "[w]hen a child is removed from his or her home, placement preference is to be given to relatives or fictive kin of the child." We find, however, that

---

[3]The father's parental rights were also terminated. The permanency plan for the child is adoption in the current placement.

2

the DHS's compliance with this statute has no bearing on the circuit court's findings upon which termination was based.

Regardless of the child's placement, the evidence clearly demonstrated that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(6), termination of parental and custodial rights is permitted upon such findings. Further, we have explained that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§ 49-4-604,] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§ 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the record shows, petitioner was almost wholly noncompliant with the proceedings and services ordered, and on the few occasions that petitioner complied with drug screens, she tested positive. Tellingly, petitioner makes no attempt to challenge the court's finding that she was incapable of remedying the conditions of abuse and neglect at issue.

In regard to the finding that termination was necessary for the child's welfare, petitioner simply speculates that had the child been placed with a relative, "the circuit court would have been positioned to order a lesser restrictive alternative." However, petitioner acknowledges that her older children were in a relative placement, yet her rights to those children were also terminated. Further, petitioner admits that she failed to raise this issue below, although she attempts to absolve herself of this clear waiver by asserting that counsel "did not recognize the extent of the [DHS]'s non-compliance with West Virginia Code § 49-4-601a until a review of the transcript from the February 8, 2023[,] hearing, as well as a full review of the Appendix records." This argument is disingenuous, however, as West Virginia Code § 49-4-601a(4) requires the DHS to "file its determinations [as to the willingness and suitability of potential relative placements] with the court within 45 days from the filing of the petition alleging abuse or neglect of a child." The petition in this matter was filed on July 15, 2022, meaning that the DHS was required to file the relevant determinations by August 29, 2022. If no such determinations were filed, petitioner would have been aware of the deficiency after that deadline expired, not, as she claims on appeal, after reviewing a transcript of a hearing held approximately six months after the deadline's expiration. Because petitioner failed to argue in the circuit court that the DHS did not comply with West Virginia Code § 49-4-601a, we refuse to consider the merits of her argument on appeal. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." (citation omitted)).

Finally, it is critical to note that the two relatives petitioner identified as potential placements were deemed to be inappropriate by the DHS. Accordingly, the circuit court did not err in declining to place the children in these homes against their best interests. *See* Syl. Pt. 3, *In*

*re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014) ("In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." (citation omitted)).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 14, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: March 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn