# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **R.V., H.E.-1, H.E.-2, and S.V.**

**No. 24-37** (Randolph County CC-42-2023-JA-29, CC-42-2023-JA-30, CC-42-2023-JA-31, and CC-42-2023-JA-32)

## MEMORANDUM DECISION

Petitioner Mother R.E.[1] appeals the Circuit Court of Randolph County's December 12, 2023, order terminating her parental rights to R.V., H.E.-1, H.E.-2, and S.V.,[2] arguing that the termination was erroneous because a less restrictive alternative was available. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In April 2023, the DHS filed an abuse and neglect petition alleging that the petitioner used methamphetamine during her pregnancy with H.E.-2, that H.E.-2 was born drug-affected, and that R.V. had significant truancy issues.[3] The petition further alleged that the petitioner failed to comply with an in-home safety plan that was implemented in January 2023, following the birth of H.E.-2. In accordance with the safety plan, the DHS provided services to address and remediate the

---

[1] The petitioner appears by counsel Morris C. Davis. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Melissa T. Roman appears as the children's guardian ad litem.

[2] Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because two of the children share the same initials, we refer to them as H.E.-1 and H.E.-2.

[3] The petition explained that a family court order designated the petitioner as the residential and primary custodial parent of R.V. and S.V., who do not share a father with H.E.-1 and H.E.-2. However, at the time the petition was filed, S.V., who was then fifteen years old, preferred to stay with her father and had been living with him.

petitioner's drug use and R.V.'s truancy. However, in February 2023, the petitioner tested positive for, and admitted to using, methamphetamine, and R.V. was still not attending school. In addition, the petition alleged that the petitioner was not responsive to service providers' communication attempts and did not participate in the offered services. The DHS filed an amended petition in August 2023, alleging that the petitioner neglected the children by failing to maintain a relationship with them, as she had not visited with the children since their removal and had failed to participate in drug screening as ordered.

On August 14, 2023, the court held an adjudicatory hearing wherein the petitioner stipulated that she had a substance abuse problem that negatively impacted her ability to properly care for the children and resulted in the educational neglect of R.V. Based on the petitioner's stipulation, the circuit court adjudicated the petitioner as an abusing and neglecting parent in regard to all of the children. Following the hearing, the petitioner filed a motion for a post-adjudicatory improvement period.

In November 2023, the court held a dispositional hearing. The petitioner did not appear but was represented by counsel. The DHS case worker testified that the DHS recommended termination of the petitioner's parental rights because she prioritized her needs over the children's needs. The case worker explained that she was unable to contact the petitioner throughout the case, despite numerous attempts. Additionally, the case worker stated that the petitioner failed to participate in services, missed several hearings and multidisciplinary team meetings, and made no effort to visit with the children, whom she had not seen since April 2023. The court also heard testimony from the provider who administered the petitioner's drug screens. The provider explained that the petitioner was enrolled in the call-to-test program, which required the petitioner to call the "drug test line" daily to find out when to appear for the drug screens. Over the course of seven months, the petitioner appeared for three drug screens, two of which were positive for methamphetamine; missed sixty-four drug screens; and called the drug test line sixteen times. Finally, the program coordinator for the family drug treatment court ("FTC") testified that the petitioner completed an assessment for the program but "indicated that [she was] not interested in family treatment court because . . . [she] did not have a drug problem."

After considering the evidence, the circuit court denied the petitioner's motion for a post-adjudicatory improvement period. The court found that the petitioner made no effort to appear for the hearing, comply with drug screening, maintain contact with the DHS, or visit her children. The court further found that while the petitioner participated in the assessment for FTC, she denied having a substance abuse problem despite screening positive for methamphetamine two of "the three occasions [she] did screen." Thus, the court concluded that the petitioner did not prove that she was likely to fully participate in an improvement period. Relying on this same evidence, the court further concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. The court noted its "consideration of the dispositional alternatives in proper sequence as set forth in West Virginia Code § 49-4-604" and found that termination of the petitioner's parental rights was necessary for the welfare of the

2

children. Accordingly, the circuit court terminated the petitioner's parental rights to the children.[4] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating her parental rights instead of employing a less restrictive disposition as outlined in West Virginia Code § 49-4-604(c). In support, the petitioner asserts that she "had a long standing relationship" with R.V. and S.V., and "a less restrictive disposition that would have allowed her to work on her drug issues without completely severing the relationship" with her children would have been appropriate. However, it is well-established that

> [t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected.

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Critically, the petitioner's brief fails to explain how the circuit court's finding that the conditions of abuse and neglect could not be corrected in the near future was erroneous. In fact, the petitioner does not dispute that she failed to participate in services, communicate with the DHS, appear for drug screens, and visit with her children. Nor does she dispute that she tested positive for methamphetamine twice throughout the proceedings, denied having a drug problem after stipulating to having one, and refused to participate in FTC. West Virginia Code § 49-4-604(d)(1) and (3) provide that there is no reasonable likelihood that conditions of neglect or abuse can be substantially corrected where the abusing parent is "addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and . . . [has] not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning." The record is replete with evidence of the petitioner's continued use of methamphetamine, as well as her failure to participate in the proceedings and complete the recommended treatment. As such, we conclude that the circuit court's findings that the conditions of abuse and neglect could not be corrected in the near future and that termination was necessary for the children's welfare were well-supported by the record. Accordingly, the circuit court did not err in terminating the petitioner's parental rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child").

For the foregoing reasons, the circuit court's December 12, 2023, order is hereby affirmed.

---

[4] The parental rights of H.E.-1's and H.E.-2's father were also terminated below. The permanency plan for H.E.-1 and H.E.-2 is adoption in their current placement. R.V.'s and S.V.'s father was nonabusing; however, the father relinquished his custodial rights to R.V. The permanency plan for R.V. is a legal guardianship with his current placement. The permanency plan for S.V. is to remain with her father.

3

Affirmed.

**ISSUED**: May 6, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV