**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **N.D., T.D., and S.D.**

**No. 24-632** (Berkeley County CC-02-2023-JA-165, CC-02-2023-JA-166, and CC-02-2023-JA-167)

**MEMORANDUM DECISION**

Petitioner Mother H.D.[1] appeals the Circuit Court of Berkeley County's October 2, 2024, order terminating her parental rights to N.D., T.D., and S.D., arguing that termination was not the least restrictive dispositional alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in September 2023 alleging that the children had been exposed to domestic violence in the home and that both parents were using drugs. The DHS received a referral claiming that the father threatened to throw the children, then ages one and two, down the stairs or abandon them at a shelter. Next, the DHS alleged that in June 2023 the petitioner attempted to buy drugs in the home with the children present, when the drug dealer held a gun to the petitioner's head and stole two hundred dollars. After the theft, the father beat the petitioner so severely that she lost consciousness and required hospitalization. Further, the DHS alleged that the petitioner had admitted that the father punched her in the ribs on another occasion. Shortly thereafter, the petitioner was in the hospital due to a brain abscess and tested positive for cocaine, cannabinoids, buprenorphine, and fentanyl upon admission. Later, a Child Protective Services ("CPS") worker spoke with hospital staff who stated that the petitioner signed herself out of the hospital against medical advice because there was no one to watch the children. The DHS also alleged that between July and August 2023, the petitioner tested positive for several drugs including cocaine, naloxone, marijuana, and fentanyl. The circuit court held the preliminary hearing in September 2023. A CPS worker testified that the petitioner and the father had several domestic violence incidents, but the petitioner continued to remain in a relationship with the father. Further, there was a no contact order between the petitioner and father, stemming from a criminal case, but they continued to reside together. The CPS worker also witnessed marks and scars on the petitioner's body, and the

---

[1] The petitioner appears by counsel Jason T. Gain. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Laken Scott and Catherine B. Wallace appear as the children's guardians ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

petitioner admitted that they were the result of abuse by the father. Further, the CPS worker testified that there was indication that the petitioner had engaged in intravenous drug usage.

The circuit court held the adjudicatory hearing in October 2023. The petitioner and the father did not contest adjudication and made admissions on the record. Specifically, the petitioner admitted that she used illegal substances, and that her substance use negatively impacted her ability to parent the children. Further, the petitioner admitted to engaging in domestic violence with the father in the presence of the children. Therefore, the circuit court adjudicated the petitioner and father as abusive and neglectful parents. Shortly thereafter, the court granted the petitioner a post-adjudicatory improvement period, the terms of which required that the petitioner submit to drug screens, complete a psychological evaluation and parenting training, participate in drug treatment, attend Narcotics Anonymous ("NA") or Alcoholics Anonymous ("AA") and submit her attendance sheets, and follow the recommendations made by service providers. The petitioner completed her psychological evaluation; her prognosis was poor because, although she acknowledged the significant abuse within the relationship with the father, she was dismissive of the abuse and overly optimistic of the father's ability to modify his behavior. At a review hearing in March 2024, the petitioner informed the court that the father was interfering with her ability to comply with the terms of her improvement period. Therefore, the court bifurcated the parties' proceedings and ordered that they have no contact with each other. At a status hearing two months later, the petitioner admitted to having continued contact with the father, despite the no contact order. Shortly thereafter, the petitioner filed a motion for an extension of her post-adjudicatory improvement period or for a post-dispositional improvement period. During this time, the court reconsolidated the petitioner's and father's cases due to their refusal to abide by the no contact order.

The circuit court held a dispositional hearing over multiple days in July and September 2024. A program director from a substance abuse treatment facility testified that the petitioner enrolled in treatment at the facility in April 2024. However, the petitioner did not inform the program of the no contact order with father, and she continued to communicate with him while there. The petitioner was unsuccessfully discharged from the program at the end of May 2024 for continued rule violations. A CPS worker testified that the petitioner failed to comply with most of the improvement period requirements. Although she completed one twenty-eight-day program, the petitioner was unable to maintain her sobriety, had several positive drug screens, and failed to regularly participate in drug screens. Further, the petitioner failed to complete multiple treatment programs and was discharged from a medication-assisted treatment program and the day report center for noncompliance. The petitioner had also not completed parenting or adult skills classes, had not provided NA or AA attendance logs, and was reluctant to seek long-term in-patient treatment. Ultimately, the DHS recommended termination of the petitioner's parental rights because she was unable to maintain sobriety and unwilling to stay away from the father.

Next, the petitioner testified to the father's physical, mental, and verbal abuse. She stated that the father made multiple threats to kill her, degraded her, and threw things at her. After the drug deal incident, the petitioner testified that the father yelled at her and shoved her, which caused her to have a seizure and lose consciousness. When she awoke, she stated that the father's hands were around her neck and she was unsure whether he was attempting to strangle her or help her. Despite her testimony to the contrary, the petitioner also claimed that the father had not physically

2

abused her after the children were born. Regarding her sobriety, the petitioner admitted that she had failed to complete multiple treatment programs. The petitioner testified that she was sober and that she was applying for further treatment programs to address her drug addiction; however, she admitted that she would not be able to take care of the children until she received treatment and support. During closing, the petitioner's attorney confirmed with the court that the petitioner had attended several treatment facilities and relapsed on two occasions but continued to seek treatment and work on her sobriety. The circuit court found that the petitioner had not demonstrated an ability in the near future to correct the issues of abuse and neglect and that the children's welfare necessitated termination of the petitioner's parental rights. Further, there was no less restrictive dispositional alternative, as evidenced by the petitioner's lack of progress in her improvement period. Accordingly, the court terminated the petitioner's parental rights to the children. It is from the dispositional order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating her parental rights instead of imposing a lesser restrictive dispositional alternative. However, it is well established that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). According to West Virginia Code § 49-4-604(d)(3), such a situation includes when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Further, "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W. Va. 496, 266 S.E.2d 114 (1980). Ample evidence supports the circuit court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect. The petitioner failed to comply with the terms of her improvement period, including failing to complete several different drug treatment programs, continuing to use drugs throughout the proceedings, and failing to participate in drug screens. Further, the petitioner continued to have contact with the abusive father and minimized his abuse during her testimony and in her psychological evaluation. Based upon the evidence presented, the circuit court properly concluded that there was no reasonable likelihood that the petitioner could correct the conditions of abuse and neglect in the near future and that the child's welfare necessitated termination of the petitioner's parental rights. Courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (allowing a court to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and[] when necessary for the welfare of the child"). As such, we decline to disturb the circuit court's decision.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 2, 2024, order is hereby affirmed.

---

[3] The father's parental rights were also terminated. The permanency plan for the children is adoption in the current foster placement.

                                                                    Affirmed.


**ISSUED**: November 4, 2025


**CONCURRED IN BY**:

Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

**NOT PARTICIPATING:**

Chief Justice William R. Wooton