**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.T.**

**No. 25-128** (Kanawha County CC-20-2024-JA-128)

## MEMORANDUM DECISION

Petitioner Mother P.T.[1] appeals the Circuit Court of Kanawha County's January 22, 2025, order terminating her parental rights to A.T., arguing that the court erred in doing so.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in March 2024 alleging that the petitioner was unable to assume custody of A.T. as she lacked a suitable residence and suffered from untreated mental health issues. According to the DHS, A.T. had been removed from the petitioner's custody in a previous abuse and neglect proceeding, after which the DHS sought to reunify the child with the petitioner. At the time, the DHS believed the petitioner was residing at a temporary housing shelter but then discovered that the petitioner had been discharged from the shelter for failing to comply with the shelter's policies. After her discharge, the petitioner was hospitalized due to her declining mental health. At the preliminary hearing in April 2024, the court ordered the DHS to provide the petitioner with remedial and reunification services, including parenting education and adult life skills classes, supervised visitation, and assistance in locating suitable housing. At a later hearing in August 2024, the court appointed a guardian ad litem for the petitioner, due to her mental health issues.

The court held an adjudicatory hearing in November 2024 at which the petitioner testified that she had been diagnosed with severe anxiety and depression. Further, she testified that she had begun mental health treatment, which included taking prescribed medication, and counseling services had been arranged. However, the petitioner admitted that she had not started counseling, could not recall the name of her medication, and that she had not refilled her medication because it was to be taken "as needed." She further testified that she had previously received counseling through a local women's shelter program. A DHS worker testified that he believed that the petitioner had obtained housing, but that the petitioner refused to tell him who lived in the home

---

[1] The petitioner appears by counsel Jason S. Lord. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Carl E. Hostler. Counsel Jennifer R. Victor appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

and failed to answer the door when the DHS attempted to conduct home visits. A case manager for the Children's Home Society testified that she supervised visits with the petitioner and A.T. and that she had concerns for the petitioner's mental health. Additionally, the petitioner completed a psychological evaluation which indicated that her prognosis for attaining minimally adequate parenting was poor because of her "mental health issues, borderline intellectual functioning," and other concerns. At the conclusion of adjudication, the court found that the petitioner was experiencing declining mental health, had failed to comply with or obtain treatment, and lacked appropriate housing for herself and the child. Further, the court found that the petitioner's declining mental health had caused her to abuse and neglect A.T. Therefore, the court adjudicated the petitioner an abusive and neglecting parent. At the end of the adjudicatory hearing, the court ordered the DHS to continue providing remedial and reunification services to the petitioner.

The circuit court held a dispositional hearing in January 2025. The petitioner failed to appear but was represented by counsel. A DHS worker testified that the DHS recommended termination of the petitioner's parental rights. The worker testified to the extensive services the DHS had provided to the petitioner, including individual parenting classes, adult life skills classes, transportation assistance, supervised visitation, and a psychological evaluation. However, the petitioner had not complied with these services and struggled to complete minor, necessary tasks. Specifically, the petitioner had lost five identification cards, had at least seven different phones, and lost every bus pass given to her by the DHS. The petitioner also stopped communicating with the DHS in December 2024 and failed to show up for several appointments, services, and supervised visits. At the visitations that she did attend, the petitioner acted recklessly and dangerously with the child and would ask to leave early. For example, the witness testified that the petitioner would leave the child, then less than one year old, on top of chairs and tables and walk away. The petitioner also began mental health treatment and medication management but stopped attending treatment before the dispositional hearing. At the conclusion of disposition, the court found that, despite the DHS's extensive services, the petitioner failed to adequately participate and was noncompliant with the services offered to her. Because of this, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of the petitioner's parental rights was necessary for the child's welfare. Accordingly, the court terminated the petitioner's parental rights to the child. It is from this order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that she should have been offered more comprehensive and tailored services before the court terminated her parental rights and the failure to do so violated this Court's holding in syllabus point 4, *In re Billy Joe M*., 206 W. Va. 1, 521 S.E.2d 172 (1999). As we explained there, termination of parental rights where allegations of neglect are made against the parent based on their intellectual capacity should only occur after a "thorough effort to determine whether the parent[] can adequately care for the children with intensive long-term assistance." *Id.* Here, the allegations made against the

---

[3] The father's parental rights were also terminated. The permanency plan for the child is adoption in the current foster placement.

2

petitioner concerned her mental health issues. We have declined to consider mental health issues to be an intellectual incapacity to which *In re Billy Joe M.* is applicable. *See In re Z.H.*, No. 16-0624, 2017 WL 75970 at *2 (W. Va. Jan. 9, 2017) (memorandum decision) ("There is no indication . . . that petitioner's mental health issues are equivalent to an intellectual incapacity as contemplated in *In Re: Billy Joe M.*"). While it is true that the psychological evaluator concluded that the petitioner was of "borderline intellectual functioning," this is insufficient to demonstrate that the petitioner lacked the intellectual capacity to properly care for the child. Simply put, the petitioner's reliance on *In re Billy Joe M.* is misplaced and does not entitle her to relief.

To the extent that the petitioner argues that her services were insufficient, we disagree. The circuit court specifically found that the DHS provided the petitioner with ten months of extensive services and appointed her a guardian ad litem as a result of her mental health issues. Despite these efforts, the court concluded that the petitioner willfully refused or was unwilling to cooperate with the services and "demonstrated an inadequate capacity to solve the problems of child abuse and neglect on their own, or with help." According to West Virginia Code § 49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Because the petitioner failed to adequately participate in services, communicate with the DHS, or participate in the case plan, the court found that there was no reasonable likelihood that the petitioner could correct the conditions of abuse and neglect. Further, the court found that termination of the petitioner's parental rights was necessary for the child's welfare. Circuit courts are permitted to terminate parental rights upon these findings. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected" (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))); W. Va. Code § 49-4-604(c)(6) (allowing a court to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and[] when necessary for the welfare of the child"). As such, we decline to disturb the circuit court's decision.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 22, 2025, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

3