**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **M.A.-1**

**No. 25-446** (Greenbrier County CC-13-2023-JA-69)

**MEMORANDUM DECISION**

Petitioner Father M.A.-2[1] appeals the Circuit Court of Greenbrier County's June 11, 2025, order terminating his parental rights to M.A.-1, arguing that the court erred in failing to impose a less restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in October 2023 against the petitioner and the children's legal guardian, D.W., alleging that M.A.-1 and her half-brother, J.G., were neglected by D.W., due to her failure to supervise them.[3] The DHS alleged that J.G., then eleven years old, was expelled for bringing a knife to school, stole a gun and several bicycles, was not attending school regularly, and would roam the town of Rainelle for hours unsupervised. During a visit to the home, a Child Protective Services ("CPS") worker observed M.A., who was five years old, running down the street by herself. Further, the DHS alleged that M.A. remained largely unsupervised and went to neighbors' houses while D.W. slept. The DHS also alleged that the petitioner was incarcerated and neglected M.A.-1, as he failed to provide her with appropriate housing, financial support, or emotional support. At adjudication in January 2024, the petitioner stipulated that M.A.-1 was a neglected child due to the petitioner's failure to provide emotional or financial support because of his incarceration.

The circuit court held a dispositional hearing in June 2025. The child's permanency social worker testified that M.A.-1 did not wish to have further contact with the petitioner. The petitioner

---

[1] The petitioner appears by counsel Kristopher Faerber. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather Olcott. Counsel Michael R. Whitt appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the child and the petitioner share the same initials, we refer to them as M.A.-1 and M.A.-2, respectively.

[3] D.W. is the children's maternal grandmother and was appointed as their guardian in May 2021. Additionally, J.G. is not the biological child of the petitioner and is not at issue in this appeal.

testified that M.A.-1 lived with him from birth until fourteen months old in early 2020, after which M.A.-1 lived with D.W., though he continued to be an active participant in her life. The petitioner testified that in 2021, he was charged with possession with the intent to distribute fentanyl in West Virginia. Shortly thereafter, and while on bond, the petitioner was arrested for possession with the intent to distribute fentanyl in South Carolina, leading to his bond being revoked. In 2023, the petitioner was convicted and sentenced in both states, receiving a three-to-fifteen-year sentence of incarceration in West Virginia and a three-year sentence of incarceration in South Carolina.[4] The petitioner stated that his parole eligibility date was October 13, 2025, and that he believed he would receive parole at that time. The petitioner also testified that when initially incarcerated, he was addicted to fentanyl, but that he had been sober since 2023. Further, the petitioner accepted responsibility for his actions and asserted that he took all classes available to him while incarcerated, including residential substance abuse therapy, Open Gate educational and transitional classes, an "OSHA 10" class, parenting education, and CPR classes. Further, the petitioner stated that while incarcerated, he maintained a good relationship with M.A.-1 and had weekly telephone calls with her until February 2025, when the child was placed with a foster family and calls ended.

The circuit court found that the petitioner had been largely absent from the child's life due to his incarceration and that, when he was not incarcerated, the petitioner left the child mostly in the care of others and actively engaged in illicit substance abuse and criminal activities. The court found that given the petitioner's limited involvement in the child's life prior to his incarceration and his current inability to participate and support the child, there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future. Further, although the petitioner had participated in treatment and parenting classes during his incarceration, the court found that the petitioner would be unable to interact with the child in order to "adequately remedy the conditions of neglect or to attain minimally adequate parenting within any reasonable period of time, even if he is granted early parole in late October of this year, as he hopes." The court also emphasized that M.A.-1 had been in an out-of-home placement for almost twenty months and was in need of continuity of care, which the petitioner could not provide. Accordingly, the court found that termination of the petitioner's parental rights was necessary for M.A.-1's welfare. Therefore, the court terminated the petitioner's parental rights to M.A.-1. It is from the dispositional order that the petitioner appeals.[5]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating his parental rights and not entering a less restrictive dispositional alternative. Specifically, the petitioner argues that the court should have placed the child in a guardianship due to his bond with the child and that, other than his incarceration, he had remedied

---

[4] The petitioner testified that his two sentences ran concurrently and that, at the time of disposition, he was serving only his West Virginia sentence because his South Carolina sentence had been completed.

[5] D.W.'s and the mother's rights were also terminated. The permanency plan for M.A.-1 is adoption in the current foster placement.

the conditions of abuse and neglect. We disagree, as the evidence demonstrated that the petitioner had not remedied the conditions of abuse and neglect and was incapable of correcting them in the near future. Indeed, the court heard evidence regarding the petitioner's convictions for possession with intent to distribute fentanyl in two states, his history of substance abuse, and his limited role in the child's life prior to his incarceration. We have stressed that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Notwithstanding the petitioner's *hope* to be released in October 2025, the court considered evidence of the petitioner's inability to correct these conditions due to his incarceration on a sentence of three to fifteen years, in addition to the petitioner's parenting behaviors prior to his incarceration. As we have explained, even when no factors other than incarceration are raised in regard to a parent's inability to correct the conditions of abuse and neglect, a court may terminate parental rights if the court properly considers "the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability, and continuity." Syl. Pt. 3, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The court here complied with this direction. Additionally, the court found that termination of the petitioner's parental rights was necessary for M.A.-1's welfare. Courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (allowing a court to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse and be substantially corrected in the near future and[] when necessary for the welfare of the child"). As such, we decline to disturb the circuit court's decision.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 11, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: June 1, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III